STATE ex rel. COMPETITIVE
TELECOMMUNICATIONS,
Plaintiff,

MCI Telecommunications Corp., Midwest Independent Coin Payphone Association, Missouri Office of the Public Counsel, Kansas City Cable Partners, Appellants,

v.

MISSOURI PUBLIC SERVICE COMMISSION, Southwestern Bell Telephone Company, Respondents,

Small Telephone Company
Group, Intervenor.

STATE ex rel. COMPETITIVE
TELECOMMUNICATIONS,
Plaintiff,

Midwest Independent Coin Payphone
Association, Appellant,

v.

MISSOURI PUBLIC SERVICE
COMMISSION, Respondent.

STATE ex rel. COMPETITIVE
TELECOMMUNICATIONS,
Plaintiff,

Missouri Office of the Public
Counsel, Appellant,

v.

MISSOURI PUBLIC SERVICE
COMMISSION, Respondent.

STATE ex rel. COMPETITIVE
TELECOMMUNICATIONS,
Plaintiff,

Kansas City Cable Partners, Appellant,

v.

MISSOURI PUBLIC SERVICE
COMMISSION, Respondent.

Nos. WD 48802, WD 48824, WD
48825 and WD 48826.

Missouri Court of Appeals,
Western District.

Aug. 2, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1994.

Application to Transfer Denied
Nov. 22, 1994.

Carl James Lumley, Clayton, for MCI Telecommunications Corp.

William M. Barvick, Jefferson City, for Midwest Independent Coin Payphone Ass'n.

Martha S. Hogerty, Jefferson City, for Missouri Office of Public Counsel.

Mark P. Johnson, Kansas City, for Kansas City Cable Partners.

Robert J. Hack, Cherlyn D. McGowan, Jefferson City, for Missouri Public Service Com'n.

Ann Effinger Meuleman, St. Louis, for Southwestern Bell.

William Ross England, III, Jefferson City, for intervenor Small Telephone Co. Group.

Before TURNAGE, P.J., and FENNER and HANNA, JJ.

FENNER, Judge.

This is a consolidated appeal from a decision of the circuit court which affirmed a decision of respondent, Missouri Public Ser-

vice Commission (Commission). The decision in question classified certain services of respondent, Southwestern Bell Telephone Company (Southwestern Bell) as transitionally competitive. Appellants, MCI Telecommunications Corporation (MCI) and Kansas City Cable Partners (KCCP) are providers of telecommunications services in Missouri. Appellant, Midwest Independent Coin Payphone Association (MICPA), is an association which promotes the interests of private payphone providers. Appellant, Missouri Office of Public Counsel (OPC), is authorized to act herein under sections 386.700 and 386.710, RSMo 1986.[1]

Under Missouri Law, telecommunications services and companies are classified as either noncompetitive, transitionally competitive or competitive. § 392.480.1, RSMo Supp.1993.[2] The classification of a company or a service offered by a company determines the extent of regulation by the Commission. Noncompetitive services and companies are the most regulated, and competitive the least.

In the case at bar, Southwestern Bell, a noncompetitive company, filed a petition with the Commission seeking transitionally competitive status for certain services it offered. Southwestern Bell filed its request under section 392.370.1. In its petition, Southwestern Bell sought to have five of its services classified as transitionally competitive. The services were message toll services (MTS), operator service, private line service, WATS and 800 Service.[3]

MTS is service between exchanges or long distance service. Southwestern Bell is only authorized to provide MTS within a Local Access Transport Area otherwise referred to as a LATA. Missouri is divided geographically into four LATAs. Appendix A, attached hereto, is a drawing showing the LATA divisions in Missouri.

An interexchange call between exchanges located in the same LATA is referred to as an intraLATA call. An interexchange call between exchanges in different LATAs is referred to as an interLATA call. Southwestern Bell is prohibited from providing interLATA service. Interexchange companies (IXCs) such as AT & T, MCI and U.S. Sprint Communications Company (Sprint), provide statewide MTS service which encompasses both interLATA and intraLATA service.

Operator services are those where a customer seeks the assistance of an operator such as in completing calls, making person to person or collect calls and billing calls to a calling card or to a third party. Private Line Services include digital private line and special access services which transmit digital electronic signals along circuits dedicated to the exclusive use of a subscriber. Private line offerings are utilized by end users, while special access services are limited to IXCs by Southwestern Bell's tariff.[4] The Commission ordered that Southwestern Bell's MTS, operator service, private line service, WATS and 800 Service, be reclassified as transitionally competitive.

The significance of transitionally competitive status is set forth in section 392.510. Under this section, telecommunications companies may file proposed tariffs for any competitive or transitionally competitive telecommunications service, which includes and specifically describes a range, establishing a maximum and minimum rate within which range a change in rates or charges for service could be made without prior notice or prior commission approval. § 392.510.1.

The range initially filed is merely a proposal which must then be approved by the Commission. The Commission can only approve the proposed tariff upon demonstration by the company and finding by the Commission

---

1. Competitive Telecommunications has not filed an appeal herein.

2. All statutory references are to RSMo Supp. 1993, unless otherwise specifically stated.

3. None of the appellants challenge the classification of Southwestern Bell's WATS and 800 services as transitionally competitive.

4. A tariff is the documents filed by a regulated telephone company with a state public utility commission or the Federal Communications Commission. The tariff details services, equipment and pricing.

that any and all rates or charges within the range are consistent with the public interest and the provisions and purposes of Chapter 392, RSMo 1986. § 392.510.2.

Once classified as transitionally competitive, Southwestern Bell's MTS and operator services will continue to be so classified initially for up to three years with the Commission having the ability to extend the classification for two additional three year periods. § 392.370.1–.2. Furthermore, in the event the Commission determines that the classification as transitionally competitive is no longer in the public interest or consistent with the intent and purpose of Chapter 392, RSMo 1986, it may reclassify a service as noncompetitive. However, thereafter equal regulation shall be applied by the Commission to all telecommunications companies offering the same, equivalent or substitutable service. § 392.370.3.

## SCOPE OF REVIEW

■ On appeal from a decision by the circuit court in a case decided by the Public Service Commission, the appellate court reviews the decision of the Commission, not the judgment of the circuit court. *State ex rel. Missouri Office of Public Counsel v. Public Service Comm'n,* 782 S.W.2d 822, 824 (Mo. App.1990).

■ Appellate review of adjudicated proceedings before the Public Service Commission is limited to a determination of the lawfulness and reasonableness of the Commission's actions; lawfulness is determined from the statutory authority of the Commission to act while reasonableness depends on whether the decision is supported by competent and substantial evidence. Mo. Const. Art. V, Sec. 18; *State ex rel. Beaufort Transfer Co. v. Clark,* 504 S.W.2d 216, 217 (Mo. App.1973). Moreover, on appellate review a Commission order enjoys a presumption of validity as to matters of reasonableness and the court may not substitute its judgment for that of the Commission if the Commission order is supported by substantial and competent evidence on the record as a whole. *State ex rel. Ashcroft v. Public Serv. Comm'n,* 674 S.W.2d 660, 662 (Mo.App.1984) (citing *State ex rel. Utility Consumers Coun-*

*cil v. Public Serv. Comm'n,* 585 S.W.2d 41, 47 (Mo. banc 1979)). In fact, findings of the Commission are prima facie correct and one challenging a Commission order carries the burden of making a convincing showing that those findings are not reasonable and lawful. *State ex rel. Inman Freight System, Inc. v. Public Serv. Comm'n,* 600 S.W.2d 650, 654 (Mo.App.1980); *see also* § 386.430, RSMo 1986.

■ Since the Commission is a fact-finding agency, the court is not authorized to weigh the evidence heard by the Commission. *State ex rel. Inman Freight System, Inc.,* 600 S.W.2d at 654. Instead, the evidence should be considered in the light most favorable to the Commission together with all reasonable supporting inferences. As a result, if the evidence permits either of two opposed findings, the court must defer to the findings of the Commission. *State ex rel. Conner v. Public Service Comm'n,* 703 S.W.2d 577, 582 (Mo.App.1986).

## I.

## MCI APPEAL and OPC's POINT I

■ In MCI's sole point on appeal and OPC's first point, they argue that the circuit court erred in affirming the Commission's order interpreting section 392.370.1 to the extent that the Commission found that other telecommunications companies are offering services that are "substitutable" to Southwestern Bell's MTS and operator services. MCI and OPC argue that the Commission improperly interpreted section 392.370.1, in regard to the phrase "same, substitutable, or equivalent," and that under the "correct" interpretation, the facts do not support the Commission's findings in regard to Southwestern Bell's MTS and operator services.

Southwestern Bell filed its petition and the Commission decided this case under the provisions of section 392.370.1, which provides, in pertinent part, as follows:

> After the effective date of an order of the commission which finds, pursuant to section 392.361, that a telecommunications service is sufficiently competitive to justify a lesser degree of regulation, *the same,*

*substitutable, or equivalent* service offered by a transitionally competitive or noncompetitive telecommunications company shall be classified as transitionally competitive pursuant to the procedure set out in subsection 2 of section 392.490, if the telecommunications service granted a lesser degree of regulation is authorized to be provided anywhere within the certificated or service area of the transitionally competitive or noncompetitive telecommunications company (emphasis added).

MCI argues that the phrase "same, substitutable, or equivalent," has a single meaning which is "essentially the same."[5] OPC argues that the phrase requires a comparison of services that are equal in quality, in every quality dimension, to the service of the entity seeking classification.

■■■ The threshold question under this point turns on statutory construction. In questions of statutory construction, the primary role of courts is to ascertain the intent of the legislature from the language used in the statute and, if possible, give effect to that intent. *Abrams v. Ohio Pacific Express,* 819 S.W.2d 338, 340 (Mo. banc 1991). In determining legislative intent, statutory words and phrases are taken in their ordinary and usual sense generally as defined in the dictionary. *Id.* Effect must be given to the legislative intent from what the legislature said, not from what the legislature might have intended to say or inadvertently failed to say. *Missouri Division of Employment Security v. Labor & Industrial Relations Comm'n,* 637 S.W.2d 315, 318 (Mo.App.1982). Furthermore, all words utilized by the legislature are presumed to have separate and individual meaning, which is essentially a presumption against redundancy. *State v. Carouthers,* 714 S.W.2d 867, 870 (Mo.App.1986).

■■■ When there is doubt and ambiguity as to the meaning of a statute, the courts give consideration to the practical construction placed upon the act by the agency charged with its administration, although such construction is not binding on the judi-

ciary. *State ex rel. Smithco Transp. Co. v. Public Serv. Comm'n,* 307 S.W.2d 361, 377 (Mo.App.1957), *rev'd on other grounds,* 316 S.W.2d 6 (Mo. banc 1958); *State ex rel. Harline v. Public Serv. Comm'n,* 343 S.W.2d 177, 182–83 (Mo.App.1960).

The section under which Southwestern Bell filed its petition, section 392.370, was enacted by the legislature in 1987 as part of the comprehensive amendments to the regulation of telecommunications companies by the Commission. The need for amendment of the law stemmed from the breakup of telephone monopolies as a result of federal antitrust litigation.

Chapter 392, RSMo 1986, relates to telecommunications companies and their regulation by the Commission. Section 392.530.1 provides that the provisions of Chapter 392 are to be construed to:

(1) Promote universally available and widely affordable telecommunications services;

(2) Maintain and advance the efficiency and availability of telecommunications services;

(3) Promote diversity in the supply of telecommunications services and products throughout the state of Missouri;

(4) Ensure that customers pay only reasonable charges for telecommunications services;

(5) Permit flexible regulation of competitive telecommunications companies and competitive telecommunications services; and

(6) Allow full and fair competition to function as a substitute for regulation when consistent with the protection of ratepayers and otherwise consistent with the public interest.

In the case at bar, the Commission, citing Webster's Dictionary Unabridged, Second Edition, 1979, found that "same" in its common meaning requires the services to be "identical" or "alike in every respect"; "equivalent" means "that which is equal in

---

**5.** MCI actually argues that "same, substitutable, or equivalent" should be defined as "essentially the same" or "closely substitutable." However, MCI does not distinguish between "essentially

the same" and "closely substitutable." The essence of MCI's argument is that "same, substitutable, or equivalent" means "essentially the same."

value, quantity, force, meaning, etc., to something else"; and "substitutable" means "something acting or used in place of another." The Commission noted that by the plain meaning of the words used, "substitutable" requires a lesser degree of identity between the services than does "same" or "equivalent."

The Commission found that the criteria for determining "substitutability" must be considered in light of the service at issue with the criteria particularly relevant or persuasive to that service determinative. In this regard, the Commission considered the criteria argued by the parties to be relevant, but did not find it necessary to address all of the criteria argued as relevant.[6] The Commission determined that "substitutability" is to be considered separately for each service and each noncompetitive company at issue. This case by case analysis was considered necessary because of the different characteristics of each service and company. The Commission noted that the same basic criteria will often be at issue, but the weight given to the criteria may differ.

MCI argues that the words "same, substitutable, or equivalent" should not have been considered in their individual meaning. MCI argues that the three word phrase should be read together as a single criterion, which MCI argues should be "essentially the same." We find that this argument ignores the plain language of the statute and attempts to insert what the legislature might have said as opposed to what it actually said.

OPC argues that the only criteria relevant to determine whether a service is "substitutable" is customer acceptance as evidenced by a reasonably large portion of the market. Under its plain meaning, substitutable is not so narrowly defined.

We find the Commission's interpretation giving consideration to the individual meaning of each of the three words "same, substitutable, or equivalent," as correct under the rules of statutory construction. We further do not find it to have been error for the Commission to determine that "substitutability" is to be considered on a case by case basis with the weight to be given to relevant criteria depending upon the service and company involved. We accept, in part, the Commission's definition of substitutable as defined in Webster's Dictionary Unabridged, Second Edition, 1979, as something acting or used in place of another. However, we recognize the subjective nature of this definition and the difficulty of application with real guidance. Therefore, to define substitutability as used in section 392.370, we look further to the general purpose of the law in regard to regulation of telecommunications companies as stated under section 392.530.1. From the general purpose of the law we determine that in order for services to be considered as something acting or used in place of another, the record must also reflect meaningful competition between the services. *See* § 392.530.1.[7] As stated above, we further

6. The Commission noted that the parties proposed the following criteria for determining whether a service is "substitutable":
  1. interchangeability;
  2. the Department of Justice merger guidelines;
  3. market share;
  4. costs of providing the service;
  5. pricing policies;
  6. market dynamics;
  7. dialing disparities;
  8. equal access;
  9. financial strength of the companies;
  10. entry barriers;
  11. embedded customer base;
  12. market segmentation;
  13. cross-elasticity analysis;
  14. no features obviously different;
  15. replacement;
  16. quality of service;
  17. compensatory price differentials;
  18. movement of prices together;
  19. control of access;
  20. number of lines;
  21. sales volumes;
  22. essentially the same;
  23. customer choice based solely on price;
  24. effective restraint on market power;
  25. public interest in Section 392.530;
  26. consumer acceptance;
  27. existence of suppliers;
  28. willingness of customers to use other services; and
  29. "I know it when I see it."
  As stated above, the Commission did not find any of these criteria to be determinative of "substitutability" in every instance.

7. Section 392.530.1(6) references full and fair competition functioning as a substitute for regulation. We reference a lesser degree of competition, meaningful competition, as relevant to a determination of substitutability under section

agree with the determination of the Commission that substitutability must be considered on a case-by-case basis with emphasis given to the criteria relevant to the comparison of services in question.

In the point under consideration, MCI and OPC challenge the reclassification of Southwestern Bell's MTS and operator services questioning substitutability. We consider their challenge in light of our definition of substitutability.

## MTS SERVICE

As stated previously, MTS is service between exchanges or long distance service. In Case No. TO–88–142, AT & T's MTS was reclassified as transitionally competitive and the MTS service of other IXCs was reclassified as competitive. The relevant question under MCI's appeal and OPC's first point thus becomes whether Southwestern Bell's MTS is a service which is substitutable, *i.e.*, acts or is used in place of AT & T and the other IXCs' MTS as reflected by meaningful competition.

The services are not the same or equivalent in that Southwestern Bell is limited to providing only intraLATA MTS while the IXCs are permitted to provide both intraLATA and interLATA MTS. Furthermore, in the interLATA market customers are allowed to pre-subscribe for interLATA MTS which allows the customer to choose a 1 + interLATA MTS carrier from all companies offering the service.[8] However, in the intraLATA market, Southwestern Bell is the only company that can offer straight 1 + dialing. Customers wishing to use the intraLATA MTS of an IXC must dial additional digits or have an automatic dialing device.[9]

In spite of these differences, there is substantial and competent evidence in the record to show that the intraLATA MTS of Southwestern Bell and the MTS of the IXCs act and are used in place of one another in a meaningfully competitive fashion.

To determine substitutability, the Commission did consider competition within the intraLATA MTS market. The Commission noted that IXC intraLATA MTS accounts for less than ten percent of the intraLATA MTS traffic.[10] However, the percentage of IXC intraLATA MTS traffic has increased over the last several years and the Commission projected that the percentage will continue to increase with continued marketing efforts. The Commission also noted that for several IXCs, intraLATA calls account for a significant portion of their intrastate revenues. The Commission determined these facts to represent increasing customer acceptance of IXC intraLATA MTS.

The Commission also noted that there are seventy IXCs authorized to provide intraLATA MTS under their certificates of service authority. Of these IXCs, twenty-two have filed tariffs that specify rates for intraLATA service and the other IXCs can and do handle intraLATA calls. While this does not of itself reflect that the companies are actually competitive to Southwestern Bell it does indicate the level of interest in the market and is a factor for consideration.

The Commission also considered the economic analysis as presented by a staff economist who used the Department of Justice (DOJ) merger guidelines to analyze IXC MTS and Southwestern Bell MTS to determine whether these alternative services constrain the exercise of market power. Such

---

392.370 in that significant regulatory authority of the Commission can be continued for a period of nine years upon a classification of transitionally competitive. Even then, the Commission can reclassify to noncompetitive. However, such reclassification would result in equal regulation being applied to all companies offering the same, substitutable or equivalent service. § 392.370.3. Companies would then have the option of requesting a subsequent reclassification pursuant to section 392.361 or section 392.370 if applicable after the service of another company had been reclassified pursuant to section 392.361.

**8.** Presubscription allows a customer to dial long distance, interLATA, by dialing 1 + the number called through the carrier of their choice.

**9.** The record reflects that developing technology does and will increasingly allow customers preprogrammed equipment to dial the additional digits necessary for intraLATA MTS of a company other than Southwestern Bell.

**10.** The record reflects that the IXCs' share of the intraLATA MTS market is 7.28%.

constraint would provide evidence of meaningful competition.

Under the DOJ merger guidelines, products are substitutable, and thereby belong in the same market, when the products represent practical alternative sources of supply for buyers. In arriving at the conclusion that the services are substitutable, under the DOJ merger guidelines, a staff economist evaluated seller perception, customer perception and price evaluation, among other factors. The Commission found this evidence not to be determinative, but supportive of substitutability.

Based upon the evidence of current market share, the substantial increase in the percentage of intraLATA calls handled by IXCs in the past few years, the projected increase in market share, developing technology, customer perceptions, price evaluation of the MTS service of Southwestern Bell and the DOJ merger guidelines economic analysis, customer options by way of alternatives to Southwestern Bell intraLATA MTS, and the fact that IXCs are receiving significant revenues from intraLATA MTS, and considering this evidence in the light most favorable to the Commission, together with all reasonable inferences in support of the Commission's decision, we find that there is substantial and competent evidence to support the decision of the Commission finding Southwestern Bell's MTS substitutable to IXCs' MTS.

## OPERATOR SERVICE

■ As stated previously, operator service is service where a customer seeks the assistance of an operator in completing calls, making person to person or collect calls and billing calls to a calling card or a third party. Southwestern Bell's tariffed operator services consist of "Station to Station", "Person to Person", "Calling Card", "Busy Line Verify", "Busy Line Interrupt" and "Directory Assistance." Southwestern Bell only sought reclassification for its "Station to Station", "Person to Person" and "Calling Card" operator services.

Once again, in Case No. TO–88–142, AT & T's operator service was reclassified as transitionally competitive and the operator service of other IXCs was reclassified as competitive. In regard to operator service, the relevant question in the case at bar is whether Southwestern Bell's operator service is substitutable, i.e., acts or is used in place of the operator service of AT & T and the other IXCs as reflected by meaningful competition, to the operator service of IXCs.

In considering substitutability of operator service, the Commission considered that there are eight IXCs which offer only credit card billing and there are thirty-one IXCs which offer station to station, person to person, and credit card billing. Customers access either the IXCs' operator services or Southwestern Bell's operator services for the same purpose, which is to complete a call in a different manner than a straight MTS call. Customers can use operator services of IXCs or Southwestern Bell. For intraLATA operator service calls, a customer who dials 0 + will get Southwestern Bell. For a customer to get an IXC operator service, the customer must either dial a specific access code for a specific IXC or "00" to get a pre-subscribed interLATA IXC operator service which can then aid the end user in placing an intraLATA call.

Once again, in spite of the dialing differences and the intraLATA restriction of Southwestern Bell, there is substantial and competent evidence in the record to show that the operator services of Southwestern Bell and the IXCs are used in place of one another in a meaningfully competitive fashion.

The record reflects that customers can dial access codes for each desired operator service, private pay phones employ automatic dialing techniques to access desired operator service, and the various operator services fulfill the same calling requirements of the customer. The Commission noted that from 1988 to 1991 Southwestern Bell's operator-assisted billed message volumes decreased by 20% even though overall operator assisted minutes increased, and that 38% of local operator-assisted calls are handled by IXCs. IXC operator services are marketed as substitutable for those of Southwestern Bell and some IXCs charge different rates for intraLATA as opposed to interLATA operator

service reflecting competition with Southwestern Bell. The Commission also received an economic analysis applying the DOJ merger guidelines which reflected substitutability.

Considering the evidence in the light most favorable to the Commission, together with all reasonable inferences in support of the Commission's decision, we defer to the findings of the Commission. The record supports the finding of substitutability for operator services. MCI and OPC's challenge to the judgment of the circuit court affirming the order of the Commission, which found the MTS and operator services of Southwestern Bell to be substitutable for IXCs' MTS and operator services, is denied.

MCI's appeal is denied as is OPC's first point.

## II.

### OPC POINT II

■ In its second point on appeal, OPC argues that the Commission's Report and Order, to the extent that it classified Southwestern Bell's MTS and operator services as transitionally competitive, was not supported by adequate findings of fact. OPC argues that the Commission's findings of fact are conclusory and insufficient for a reviewing court to ascertain the basis for the Commission's decision.

■ The Commission is required to make findings of fact in its report which support its conclusions. *State ex rel. A.P. Green Refractories v. Public Serv. Comm'n*, 752 S.W.2d 835, 838 (Mo.App.1988). The findings of fact must be sufficiently definite and certain or specific under the circumstances of a particular case to enable the court to review the decision intelligently and ascertain if the facts afford a reasonable basis for the order without resorting to the evidence. *Id.*

OPC contends that the Commission failed to provide adequate findings of fact as to what constitutes substitutability and upon what evidence the Commission relied upon in finding substitutability. Substitutability is discussed extensively under Section I of this opinion. As reflected in our discussion of

substitutability under Section I hereof, the Commission's findings were sufficiently definite and certain to allow adequate review of the decision and determination of the facts relied upon. Further discussion would be of no precedential value.

OPC's second point is denied.

## III.

### MICPA APPEAL and KCCP'S POINT I

■ In MICPA's sole point on appeal and KCCP's first point, they argue that the circuit court erred in affirming the decision of the Commission reclassifying Southwestern Bell's MTS and operator services as transitionally competitive because the determination did not meet the requirements of sections 392.370 and 392.490. MICPA and KCCP complain that the Commission failed to consider "all relevant factors" as required under section 392.361.

As previously discussed under Section I hereof, section 392.370.1 provides, in pertinent part:

After the effective date of an order of the commission which finds, pursuant to section 392.361, that a telecommunications service is sufficiently competitive to justify a lesser degree of regulation, the same, substitutable, or equivalent service offered by a transitionally competitive or noncompetitive telecommunications company shall be classified as transitionally competitive pursuant to the procedure set out in subsection 2 of section 392.490, if the telecommunications service granted a lesser degree of regulation is authorized to be provided anywhere within the certificated or service area of the transitionally competitive or noncompetitive telecommunications company.

Section 392.490 provides, in pertinent part:

2. A noncompetitive or transitionally competitive telecommunications company which seeks to file a tariff classifying a telecommunications service as transitionally competitive by operation of subsection 1 of section 392.370, shall apply to the commission for an order finding that the transitionally competitive classification is consistent with subsection 1 of section 392.370.

If such tariff does not otherwise propose a new rate, rental or charge or new regulation or practice affecting any rate, rental or charge, the transitionally competitive classification shall become effective ninety days after filing...

Section 392.361 provides, in pertinent part:

1. A telecommunications company may file with the commission a petition to be classified as a competitive telecommunications company or a transitionally competitive telecommunications company under this section, or to have services classified as competitive or transitionally competitive telecommunications services under this section....

2. In response to a petition filed or a proceeding instituted upon its own motion, the commission shall afford all interested persons reasonable notice and an opportunity to be heard to determine whether a telecommunications company or service may be subject to sufficient competition to justify a lesser degree of regulation. In making this determination, the commission shall, ... consider all relevant factors and shall issue written findings of fact delineating all factors considered....

3. The commission may classify a telecommunications company as a competitive telecommunications company only upon a finding that all telecommunications services offered by such company are competitive telecommunications services.

4. If, after following the procedures required under subsection 2 of this section, the commission determines that a telecommunications service is subject to sufficient competition to justify a lesser degree of regulation and that such lesser regulation is consistent with the protection of ratepayers and promotes the public interest it may, by order, classify:

\* \* \* \* \* \*

(2) The subject telecommunications service offered by a noncompetitive or transitionally competitive telecommunications company as a transitionally competitive telecommunications service;

(3) The subject telecommunications company, subject to the condition set forth in subsection 3 of this section, as a competitive telecommunications company; or

(4) The subject interexchange telecommunications company as a transitionally competitive telecommunications company.

As previously discussed, in the case at bar the Commission relied, in its Report and Order, on Case No. TO–88–142 in determining that the services for which Southwestern Bell was seeking transitionally competitive classifications had been previously reclassified pursuant to section 392.361. MICPA and KCCP argue that Case No. TO–88–142 does not meet the requirement of a section 392.361 hearing. MICPA and KCCP argue that the section 392.361 examination contemplated by section 392.370.1 requires that the specific service in question, in the case at bar Southwestern Bell's intraLATA MTS and operator service, must be specifically examined in a section 392.361 review. MICPA and KCCP argue that Case No. TO–88–142 dealt with interLATA service, not intraLATA service. Therefore, MICPA and KCCP argue that the record does not establish that the requisite section 392.361 review has been undertaken.

The argument presented once again requires determination of the meaning of section 392.370 as well as section 392.361 within the context of the issue raised under this point. As previously discussed under Section I, in questions of statutory construction, the primary role of courts is to ascertain the intent of the legislature from the language used in a statute and, if possible, give effect to that intent. *Abrams v. Ohio Pacific Express,* 819 S.W.2d at 340. Effect must be given to the legislative intent from what the legislature said, not from what the legislature might have said or intended to say. *Missouri Division of Employment Security v. Labor & Industrial Relations Comm'n,* 637 S.W.2d at 318. When there is doubt and ambiguity as to the meaning of a statute, the courts give consideration to the practical construction placed upon the act by the agency charged with its administration, although such construction is not binding on the judiciary. *State ex rel. Smithco Transp. Co. v. Public Serv. Comm'n,* 307 S.W.2d at 377, *rev'd on other grounds,* 316 S.W.2d 6 (Mo.

banc 1958); *State ex rel. Harline v. Public Serv. Comm'n,* 343 S.W.2d at 182–83.

As adopted by the legislature, section 392.370 has three basic requirements:

1) a competitor's service has been reclassified as transitionally competitive or competitive, by order of the Commission pursuant to section 392.361.

2) the service sought to be reclassified (in the case at bar, Southwestern Bell's MTS, operator services, private line service, WATS and 800 service) is the same, substitutable or equivalent to the competitor's service.

3) the competitor's service is authorized to be provided anywhere within the petitioner's (Southwestern Bell's) service area.

As stated above, the Commission relied on Case No. TO–88–142 as the relevant section 392.361 review, under the first requirement of section 392.370. Case No. TO–88–142 was a section 392.361 review of interLATA service in the State of Missouri. Case No. TO–88–142 consolidated pending applications for reclassification by AT & T and 29 other IXCs including MCI and KCCP. In Case No. TO–88–142 the Commission found that all of the IXCs' services, except AT & T's MTS and operator services, were subject to sufficient competition among each other as well as from AT & T to warrant a lesser degree of regulation and classification as competitive. AT & T's MTS, operator services, private line services, WATS and 800 service were reclassified from noncompetitive to transitionally competitive.

The question thus becomes whether the services reclassified pursuant to Case No. TO–88–142, which case was a section 392.361 review, are the same, substitutable or equivalent to the services that Southwestern Bell seeks to reclassify in the case at bar. As discussed under Section I hereof, we find that the services, challenged by the parties in this appeal, meet this test. Therefore, the only remaining requirement of section 392.370 is whether the competitor's service is authorized to be provided within Southwest-

ern Bell's service area, a matter that is not in dispute.

MICPA's and KCCP's argument that section 392.370 requires a section 392.361 review which relates specifically to the intraLATA MTS of Southwestern Bell and the IXCs is contrary to the plain language of section 392.370. Section 392.370 requires that the service reviewed in a previous section 392.361 proceeding (in this case the MTS, operator service, and private line service of AT & T and the other IXCs) be the same, substitutable or equivalent to the service sought to be reclassified in the case before the Commission under section 392.370 (i.e., the MTS, operator service and private line service of Southwestern Bell). Section 392.370 does not require that the service reviewed in the previous section 392.361 proceeding be the same specific service, as argued by MICPA and KCCP.

Having found that the requirements of section 392.361 were met, consideration of "all relevant factors under section 392.361" was not necessary for the reclassification granted to Southwestern Bell in the case at bar.

MICPA's sole point and KCCP's first point are denied.

## IV.

### KCCP POINT II

■ Under its second point, KCCP argues that the finding of the Commission that Southwestern Bell's private line and special access services are "equivalent" to services provided by other telecommunications companies in Missouri is not supported by substantial evidence.[11]

The Commission defined equivalent, citing Webster's Dictionary Unabridged, Second Edition, 1979, as "that which is equal in value, quantity, force, meaning, etc., to something else." The Commission further related this definition to telecommunications services by requiring technical equality, equality in function, equality in the manner in which the

11. As stated previously herein, Southwestern Bell's private line services are utilized by end users while its special access services are limited to IXCs by its tariff. The record reflects that

special access services offered by companies other than Southwestern Bell are used in place of Southwestern Bell's private line services.

**46**

service is provided, equality in end user requirements and perceptions, and equality in quantity of service able to be provided as well as quality of service. We adopt the Commission's definition of equivalent.

The record reflects that the private line services of IXCs and Southwestern Bell are technically equal in function and the manner in which they are provided. They are of equal quality and quantity and customers utilize the services in the same manner and perceive the services to be equal.

The record reflects that IXCs bypass Southwestern Bell's facilities and provide direct connections between major customers and the IXCs' interconnection switching facility. A number of IXCs have tariffed private line services for virtual private networks (VPNs). VPNs share network facilities and although they appear to be private lines, they are actually network facilities. VPNs may be cheaper for some customers and they provide more sophisticated network management capabilities than dedicated private line service.

Additionally, Competitive Access Providers (CAPs) are beginning to have a presence in Missouri. CAPs are companies other than IXCs which provide private line and special access services in competition with Southwestern Bell and other telecommunications companies. Microwave networks have also increased in recent years as an alternative to Southwestern Bell's private line service.

There is no dispute that these equivalent private line services are provided within Southwestern Bell's service area.

As discussed above, the relevant questions in a section 392.370 review are whether 1) a competitor's service has been reclassified pursuant to section 392.361, 2) the service is the same, substitutable or equivalent, and 3) the competitor's service is authorized within the petitioner's service area.

Case No. TO–88–142 reviewed the private line services of AT & T and other IXCs.

The case found that there is a single statewide market for private line services. In Case No. TO–88–142, private line services were defined as specialty services with dedicated access on both ends. These services are equivalent to the private line and special access services of Southwestern Bell.

Case No. TO–88–142 referenced the fact that private line services are for high volume users and they are not "switched" through the local exchange carrier. Equal access to private line services was found to exist statewide. Additionally, private line services were noted in Case No. TO–88–142 to be subject to greater competitive pressure than MTS services. Case No. TO–88–142 reclassified AT & T's private line services as competitive as well as the private line services of the other IXCs offering private line service.

The record reflects that dialing disparities do not exist in regard to private line service and that business customers who use these services are more sophisticated in selecting a telecommunications company to provide the service, thereby making the market for private line service more competitive than telecommunications services that have a significant residential market. Considering the evidence in the light most favorable to the Commission, together with all reasonable inferences in support of the Commission's decision, we find that the determination of the Commission that Southwestern Bell's private line and special access services are "equivalent" to the private line and special access services of other telecommunications companies is supported by substantial and competent evidence.

KCCP's second point is denied.

The judgment of the circuit court affirming the Report and Order of the Commission is affirmed.

All concur.

APPENDIX "A"