

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF LACLEDE GAS COMPANY D/B/A MISSOURI GAS ENERGY, FOR APPROVAL TO CHANGE ITS INFRASTRUCTURE SYSTEM REPLACEMENT SURCHARGE; | WD76509 |
| | OPINION FILED: |
| **Respondent,** | January 14, 2014 |
| PUBLIC SERVICE COMMISSION OF THE STATE OF MISSOURI, | |
| **Respondent,** | |
| v. | |
| THE OFFICE OF PUBLIC COUNSEL, | |
| **Appellant.** | |

### APPEAL FROM THE PUBLIC SERVICE COMMISSION

**Before Division Four: James Edward Welsh, C.J., Cynthia L. Martin, J., and Patrick Robb, Sp. J.**

The Office of Public Counsel appeals the Missouri Public Service Commission's order approving the petition of Laclede Gas Company ("Laclede") to change its "Infrastructure System Replacement Surcharge" ("ISRS"). The Office of Public Counsel contends that the Commission's order was unlawful because it approved an increase in the ISRS more than three years after Laclede's most recent general rate case, in violation of its statutory authority. We affirm.

## Background

Laclede is a natural gas provider serving approximately 500,000 customers in Missouri.[1] It is a "public utility" and a "gas corporation," as defined in sections 386.020(43) and (18), RSMo.[2] The Public Service Commission is a state administrative agency responsible for the regulation of public utilities, including gas corporations, in Missouri, pursuant to sections 386.040 and 386.250(1). *State ex rel. MoGas Pipeline, LLC v. Mo. Pub. Serv. Comm'n* 366 S.W.3d 493, 496 (Mo. banc 2012). The Office of Public Counsel is a state agency that represents consumers in all utility proceedings before the Commission and in all appeals of Commission orders. §§ 386.700 and 386.710; *Pub. Serv. Comm'n of State v. Mo. Gas Energy*, 388 S.W.3d 221, 224 (Mo. App. 2012).

In 2003, the Missouri Legislature enacted sections 393.1009, 393.1012, and 393.1015 ("the ISRS statutes") as part of House Bill 208. Those statutes provide a method, outside of a formal rate case, for a gas corporation to recover the cost of certain government-mandated infrastructure system replacement projects via a petition to establish or change an ISRS. On February 8, 2013, pursuant to the ISRS statutes, Laclede filed an "Application and Petition to Change Its Infrastructure System Replacement Surcharge" and a revised tariff sheet.[3] Laclede sought the Commission's approval to adjust the rate elements on its already established ISRS rate

---

[1]The original gas company respondent in this case was Southern Union Company D/B/A Missouri Gas Energy ("MGE"). Following the acquisition of MGE by Laclede Gas Company, this court sustained the companies' motion to substitute Laclede for MGE as a respondent in this case on November 26, 2013.

[2]Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2012 Cumulative Supplement.

[3]"A tariff is a document which lists a public utility['s] services and the rates for those services." *In re KCP & L Greater Mo. Operations Co*., 408 S.W.3d 175, 178 (Mo. App. 2013). The Commission must review the proposed tariff sheets and approve them before the proposed tariffs take effect. *Id*. (citing 4 CSR 240–3.010(28)).

2

schedule to recover an additional $1,741,862 in infrastructure system replacement costs that it incurred during the last seven months of 2012.

This was Laclede's fourth request to adjust its existing ISRS since its most recent general rate case was decided almost three years earlier, on February 10, 2010.  Laclede's initial petition to establish an ISRS, filed in July 2010, was approved by the Commission and became effective on September 18, 2010.[4]  The Commission subsequently approved three adjustments to that ISRS, with effective dates of May 17, 2011, February 14, 2012, and October 3, 2012.

On February 13, 2013, in response to Laclede's fourth petition to change its ISRS, the Commission suspended the proposed tariff change and directed its Staff to submit a recommendation.  The Staff recommended an adjustment to Laclede's ISRS to increase the "incremental revenue requirement" by $1,741,740.[5]  The Staff noted that, if the Commission approved the petition, Laclede's "total ISRS revenue requirement will amount to $6,343,452," a "composite amount" of $1,741,740 from the instant case and the sum of Laclede's four prior ISRS rate increases.

The Commission, *sua sponte*, asked the parties to address whether the Commission had the statutory authority to approve Laclede's petition to change its ISRS in light of the time limitation in section 393.1012.  Section 393.1012.2 provides that "[t]he commission shall not approve an ISRS for any gas corporation that has not had a general rate proceeding decided or dismissed . . . within the past three years."  Noting that Laclede's most recent general rate case was decided on February 10, 2010, and its petition in this case was filed on February 8, 2013

---

[4]That ISRS was set to terminate on September 17, 2013, unless Laclede filed a new general rate case, which would allow the ISRS to be collected until resolution of that case.  *See* § 393.1012.3.  Laclede filed such a rate case on July 7, 2013.

[5]The Staff's recommendation reflected a downward adjustment of $122.

3

(just under three years later), the Commission observed that section 393.1012.2 "does not clarify" whether the petition must be *filed* within three years of the most recent rate case decision or if the Commission's *approval* of the petition is the relevant date. Public Counsel responded with the contention that section 393.1012.2 prohibits the Commission from *approving* Laclede's petition because more than three years had passed since Laclede's last general rate case had been decided. Laclede and the Staff argued that the three-year limitation in section 393.1012.2 applies only to the approval of the *initial* ISRS rate increase, not to subsequent petitions to *change* an existing ISRS.

On May 1, 2013, the Commission issued its "Order Approving Change in Infrastructure System Replacement Surcharge, Rejecting Tariff, and Approving New Tariff," essentially adopting the Staff's and Laclede's positions on the three-year limitation in section 393.1012.2. The Commission found that the statutory definition of "ISRS"[6] is "ambiguous" because it is unclear whether the term "an ISRS," as used in section 393.1012.2, means the "initial" ISRS surcharge *and* "each subsequent change to the surcharge," or if it refers *only* to the "initial" ISRS. Applying the rules of statutory construction, the Commission found that the three-year limitation on its authority to approve "an ISRS" applies only to the *establishment* of the initial ISRS, and not to subsequent *changes* or *adjustments* to the ISRS. The Commission concluded that it had the statutory authority to approve Laclede's petition to change its ISRS because the initial ISRS, approved in September 2010, "was within three years of the decision in [Laclede's] most recent general rate proceeding." Both the Commission's order approving a change to the ISRS and the revised tariff sheet became effective on May 15, 2013.

---

[6]Section 393.1009(6) defines "ISRS" simply as an "infrastructure system replacement surcharge."

4

The Commission denied Public Counsel's application for rehearing but granted its request that the Staff file a Reconciliation, as required by statute. The Commission approved the Reconciliation on June 6, 2013.

**Discussion**

Public Counsel argues on appeal that the Commission's order approving a change to Laclede's ISRS was unlawful because the Commission lacked the statutory authority, pursuant to section 393.1012.2, to approve the proposed ISRS rate increase more than three years after Laclede's last general rate case had been decided.

The Commission's order is presumed to be valid, and the burden is on the party attacking it to prove that it is invalid. *State ex rel. Pub. Counsel v. Mo. Pub. Serv. Comm'n*, 289 S.W.3d 240, 246 (Mo. App. 2009); § 386.430. The Commission found that this was a "non-contested case," in that no hearing was required, citing section 393.1015.2(3), and the parties do not dispute that. "In noncontested cases, we judge only whether or not the Commission's order was lawful." *State ex rel. Pub. Counsel v. Pub. Serv. Comm'n*, 259 S.W.3d 23, 30 (Mo. App. 2008). Moreover, the sole issue in this appeal involves the interpretation of a statute, which is matter of law. *State ex rel. Office of Pub. Counsel and Mo. Indus. Energy Consumers v. Mo. Pub. Serv. Comm'n*, 331 S.W.3d 677, 683 (Mo. App. 2011). On issues of law, we do not defer to the Commission but, instead, address the matter *de novo*. *MoGas Pipeline,* 366 S.W.3d at 496. Although the "interpretation and construction of a statute by an agency charged with its administration is entitled to great weight," in determining an order's lawfulness, we "exercise[] independent judgment and must correct erroneous interpretations of law." *Office of Pub. Counsel*, 331 S.W.3d at 684. An order is lawful if the Commission had the statutory authority to act as it did. *Id*. at 682. The Commission "is a creature of statute," and its "powers are limited to

5

those conferred by [statute], either expressly, or by clear implication, as necessary to carry out the powers specifically granted."[7] *MoGas Pipeline*, 366 S.W.3d at 496. If a power is not granted to the Commission by statute, then the Commission does not have that power. *Id*.

This appeal involves the interpretation of section 393.1012. Our goal in construing a statute is to ascertain the intent of the legislature from the language used and, if possible, give effect to that intent. *See State ex rel. Competitive Telecomms. v. Mo. Pub. Serv. Comm'n*, 886 S.W.2d 34, 39 (Mo. App. 1994). In so doing, we consider the plain and ordinary meaning of the words used in the statute. *Office of Pub. Counsel*, 331 S.W.3d at 683. We presume that the legislature intended for each word and phrase of a statute to have effect and that the legislature did not include "idle verbiage or superfluous language." *Id*. at 684. If we find that the legislative intent is clear and unambiguous, then we are bound by that intent. *State ex rel. Union Elec. Co. v. Pub. Serv. Comm'n,* 399 S.W.3d 467, 479-80 (Mo. App. 2013). We "look beyond the plain meaning of the statute only when the language is ambiguous or will lead to an absurd or illogical result." *Office of Pub. Counsel*, 331 S.W.3d at 683. A statute is ambiguous if the language is subject to more than one reasonable interpretation. *Union Elec. Co.,* 399 S.W.3d at 480.

As noted, the Commission found that the term "an ISRS," as used in section 393.1012.2, is "ambiguous." We are not bound by the Commission's determination of ambiguity. *See Competitive Telecomms.*, 886 S.W.2d at 39 ("When there is doubt and ambiguity as to the meaning of a statute, the courts give consideration to the practical construction placed upon the act by the agency charged with its administration, although such construction is not binding on

---

[7]The PSC suggests that because the Commission is both authorized and required by section 393.1015.2 to issue a decision on an ISRS petition within one hundred twenty days after it is filed, and the Commission did so here, then that conclusively resolves the question of "lawfulness." That is incorrect. The lawfulness issue is whether the Commission was authorized to act as it did in light of the time limitations in section 393.1012.2, not whether it has the authority to rule on ISRS petitions in general. *See, e.g., MoGas Pipeline*, 366 S.W.3d at 496.

the judiciary."). Nevertheless, in this case, we agree that the phrase "an ISRS," as used in section 393.1012.2, is "subject to more than one reasonable interpretation." *See Union Elec. Co.*, 399 S.W.3d at 480. "Where the language of a statute is ambiguous, the intent of the Legislature must be discerned and given effect." *State ex rel. Mo. Pipeline Co. v. Mo. Pub. Serv. Comm'n*, 307 S.W.3d 162, 173-74 (Mo. App. 2009).

In order to ascertain the legislature's intent, we begin with a review of the ISRS statutory framework. Under the ISRS statutes, in order for a gas company's infrastructure replacement costs to be recovered via an ISRS, they must arise from an "eligible infrastructure system replacement." *See* §§ 393.1009(1) and 393.1012.1. Pursuant to section 393.1009(3), "eligible infrastructure system replacements" are "gas utility plant projects" that meet certain specific criteria.[8] "Gas utility plant projects" are defined in section 393.1009(5) as projects that consist of materials or components "installed to comply with state or federal safety requirements as replacements for existing facilities that have worn out or are in deteriorated condition," "projects extending the useful life or enhancing the integrity of pipeline system components undertaken to comply with state or federal safety requirements," and "[f]acilities relocations required due to construction or improvement of a highway, road, street, public way, or other public work."

Section 393.1012 sets forth the procedures, including the requirements and limitations, to establish or change an ISRS. It states that

> a gas corporation . . . may file a petition and proposed rate schedules with the commission *to establish or change* ISRS rate schedules that will allow for the adjustment of the gas corporation's rates and charges to provide for the recovery of costs for eligible infrastructure system replacements.

---

[8]Section 393.1009(3) requires that the projects: (a) do not increase revenues by connecting to new customers, (b) are in service and being used, (c) were not included in the most recent general rate case, and (d) replace or extend the useful life of an existing infrastructure.

7

§ 393.1012.1 (emphasis added). The ISRS surcharge is subject to limits, both on the lower end and the upper end, on the revenues that it will produce in relation to the last-approved base rate amount. *See id.* The Commission may not approve an ISRS that falls outside those limits. *See id.* Subsection .1 further provides that "*[a]n ISRS and any future changes thereto* shall be calculated and implemented in accordance with the provisions of [the ISRS statutes]." *Id.* (emphasis added).

The primary focus of this case is subsection .2 of section 393.1012, which governs *when* the Commission may "approve an ISRS" in relation to its most recent general rate case. It states:

> The commission **shall not approve an ISRS for any gas corporation that has not had a general rate proceeding decided or dismissed** by issuance of a commission order **within the past three years**, unless the gas corporation has filed for or is the subject of a new general rate proceeding.

§ 393.1012.2 (emphasis added). Subsection .3, on the other hand, sets forth *the length of time* that an ISRS can remain in place. It provides:

> **In no event shall a gas corporation collect an ISRS for a period exceeding three years** unless the gas corporation has filed for or is the subject of a new general rate proceeding; provided that the ISRS may be collected until the effective date of new rate schedules established as a result of the new general rate proceeding, or until the subject general rate proceeding is otherwise decided or dismissed by issuance of a commission order without new rates being established.

§ 393.1012.3 (emphasis added). Under this provision, an approved ISRS can be collected only for three years at the most, at which point it then terminates (unless a new rate case is pending). Thereafter, the gas corporation has to file revised rate schedules to reset the ISRS to zero upon resolution of a general rate case. § 393.1015.6(1). The gas corporation may then seek to establish a new ISRS by filing a petition pursuant to section 393.1012.

Collectively, the ISRS statutes permit the gas company to make single-issue rate increases between general rate cases in order to timely recover its costs for certain government-

8

mandated infrastructure projects without the time and expense required to prepare and file a general rate case,[9] while, at the same time, limiting the collection of the ISRS surcharge to three years to prevent its unlimited use outside of a general rate case.[10] *See* §§ 393.1009, 393.1012, and 393.1015.

In its order granting Laclede's request to change its ISRS more than three years after its last general rate case, the Commission noted that the issue is a matter of first impression involving the interpretation of section 393.1012.2.[11] The Commission found that the statutory definition of an "ISRS" is "ambiguous" because, in the context of section 393.1012.2, it is unclear "whether the term means the initial infrastructure system replacement surcharge and each subsequent change [thereto] or only the initial infrastructure system replacement surcharge established by the Commission." Applying the rules of statutory construction, the Commission observed that section 393.1012.1 "makes a distinction between <u>establishing</u> and <u>changing</u> ISRS rate schedules, and states that '[a]n ISRS and any future changes thereto shall be calculated and implemented in accordance with the provisions of [the ISRS statutes].'" "This language makes it clear than 'an ISRS' is different than 'future changes,'" the Commission reasoned. The

---

[9]In construing a similar statute that permits a utility to apply for the approval of "periodic rate adjustments outside of a general rate case" for expenses arising from environmental regulations, this court explained that "traditional ratemaking methods can be expensive and time consuming, for both the utility and consumer." *Office of Pub. Counsel*, 331 S.W.3d at 685 (construing § 386.266). The court observed that that cost recovery mechanism "reduce[d] the expense of the regulatory process by decreasing both the magnitude and frequency of rate cases." *Id.*

[10]The rates and issues decided in the last rate case are the foundation for establishing the ISRS surcharge; thus, the surcharge must be requested within three years of the last decided rate case in order to timely utilize those amounts. *See, e.g.,* §§ 393.1012.1; 393.1015.4-.6; and 393.1009(3).

[11]We reject Public Counsel's arguments that rely on the history and practice of the Commission in approving other ISRS petitions. The Commission's actions in other ISRS cases are not relevant here. The Commission is not bound by *stare decisis* based on prior administrative decisions if the action taken is not otherwise unreasonable or unlawful. *State ex rel. Laclede Gas Co. v. Pub. Serv. Comm'n*, 392 S.W.3d 24, 36-37 (Mo. App. 2012). Moreover, the information about other ISRS petitions does not conclusively demonstrate anything that is pertinent to the issue in this case.

9

Commission found that Public Counsel's argument "would require the Commission to ignore these clear differences and treat 'an ISRS' and subsequent changes to it as the same thing," thereby violating rules of statutory construction. The Commission concluded that the three-year limitation on its authority to approve "an ISRS" applies only to the first time rates are increased through the ISRS (the establishment of the ISRS), and not to subsequent changes to the ISRS. The Commission held, therefore, that it had the statutory authority to approve Laclede's petition because the initial ISRS, approved in September 2010, "was within three years of the decision in [Laclede's] most recent general rate proceeding," and the Commission "is not prohibited by law from approving subsequent changes to that ISRS."

Public Counsel argues that the Commission erred in its interpretation of section 393.1012.2. Public Counsel contends that the three-year limit on approving "an ISRS" applies not only to the *establishment* of the ISRS, but also to *each subsequent change* to that ISRS. Thus, according to Public Counsel, the Commission's order violates section 393.1012.2 because the Commission's approval is outside the three-year time limit. The primary focus of Public Counsel's argument is that the Commission's interpretation of section 393.1012.2 as applying only to the *establishment* of an ISRS creates inconsistencies with various ISRS provisions that refer only to "an ISRS" but clearly apply both to establishing *and* to changing an ISRS. Based on our review of the individual statutes and the entire statutory scheme, we disagree.

"When determining the meaning of statutory language, the whole act must be taken into consideration, and the words of one section or statute must be read in the context of other statutes on the same subject as well as with cognate sections." *In re KCP & L Greater Mo. Operations Co.*, 408 S.W.3d 175, 186 (Mo. App. 2013). Here, the Commission based its interpretation of the term "an ISRS" in section 393.1012.2 primarily on the language in section 393.1012.1, which

10

states that a gas corporation "may file a petition and proposed rate schedules with the commission *to establish or change* ISRS rate schedules," and that "*[a]n ISRS and any future changes thereto* shall be calculated and implemented in accordance with the provisions of [the ISRS statutes]." (Emphasis added.) Based on the language of that statute, which differentiates between the initial ISRS and future changes thereto, the Commission concluded that the three-year limitation in 393.1012.2 applies only to the establishment of the ISRS. This interpretation is consistent with the obvious legislative intent, which is to permit the gas company to timely recover its costs for government-mandated infrastructure system replacement projects via a rate adjustment outside of a general rate case for a limited period of time.

Public Counsel's interpretation, on the other hand, is inconsistent with the legislative intent. This is best illustrated by the scenario where the initial ISRS is established near the end of the three-year period provided for in section 393.1012.2. Under either Public Counsel's or the Commission's interpretation, in that situation, three more years could elapse, pursuant to section 393.1012.3, without the need to file a new general rate case (resulting in a total of six years between rate cases). Under Public Counsel's interpretation, however, there could be no adjustments to the ISRS within that second three-year period. Thus, regardless of what government-mandated infrastructure system replacement projects the gas company undertook during that second three-year period (whether due to government safety requirements or road construction projects), it would be unable to recover those costs via an ISRS. That conflicts with the clear legislative intent of the ISRS statutes to enable the gas company to *timely* recover its costs for such infrastructure replacement projects outside of a general rate case.

Public Counsel's interpretation seems to assume that the statutes allow a gas company to have multiple ISRSs between general rate cases. That simply is not the case. While the statutes

11

sometimes distinguish between "an ISRS" and "changes" to an ISRS, the phrase "an ISRS" also is used in a manner that refers to the initial ISRS and all changes thereto as a *single entity*. Section 393.1012.1, for example, sets limits on the "total annualized revenues" of "an ISRS."[12] These limits on the "total annualized revenues" clearly refer to the aggregate amounts of the *initial* ISRS and all subsequent changes thereto. Thus, the term "an ISRS" as used in this portion of 393.1012.1 clearly refers to the *initial* ISRS and all changes thereto as a *single entity*.

This usage indicates that "an ISRS" begins to exist when the first ISRS rate is approved, that there is only ever one ISRS at a time, and that subsequent changes are simply incorporated into that single ISRS. This is consistent with the Commission's order and is reinforced by the Staff's reference to Laclede's "total ISRS revenue requirement" as "a composite amount" of this rate increase, plus the initial ISRS and the three previous changes to it. Moreover, the ISRS statutes never refer to more than one ISRS, and, no matter how many times the ISRS is changed between rate cases, there is only one ISRS rate for each customer class and the ISRS surcharge is recovered via a single rate element on the customer's bill. *See* 4 CSR 240-3.265.[13] The "inconsistencies" that Public Counsel identifies are resolved by the fact that there is *only ever one ISRS at a time*, and the references to "an ISRS" that Public Counsel points to refer to the whole of that one ISRS.

The interpretation of an ISRS as a single entity also is supported by various provisions of section 393.1015, which set forth additional requirements, limitations, and procedures related to

---

[12]That portion of section 393.1012.1 provides that the Commission may not approve "*an ISRS*" that would produce total annualized ISRS revenues below the lesser of one million dollars or one-half percent of the gas corporation's base revenue level approved in its most recent general rate proceeding; nor may it approve "*an ISRS*" that would produce total annualized ISRS revenues exceeding ten percent of the gas company's base revenue level approved in its most recent general rate proceeding.

[13]*See* 4 CSR 240-3.265(8) and (9) (setting forth the notice and customer billing requirements associated with an ISRS).

establishing, changing, or implementing an ISRS. Section 393.1015.3, for example, provides that "[a] gas corporation may effectuate a *change* in its rate pursuant to . . . this section no more often than two times every twelve months." (Emphasis added.) Rule 4 CSR 240-3.265 (promulgated by the Commission pursuant to § 393.1015.11) incorporates this provision and clarifies that the first such twelve-month period begins "on the effective date of the rate schedules that establish an *initial ISRS*." Rule 4 CSR 240-3.265(16) (emphasis added). The provision defines "an *initial ISRS*" as "*the first ISRS granted to the subject utility or an ISRS established after an ISRS is reset to zero*." *Id*. (emphasis added). This is consistent with the Commission's statutory interpretation in this case.

This interpretation also fits within the construct of statutes that provide for the ISRS (the initial ISRS as well as any changes thereto) to be reset to zero at the end of the next general rate case or after the ISRS has been in place for three years and no general rate case has been filed. *See* §§ 393.1012.3, 393.1015.6. Once the three-year period in section 393.1012.3 terminates, section 393.1015.6(1) provides that the gas corporation "shall file revised rate schedules to reset the ISRS to zero when new base rates and charges become effective . . . following a commission order establishing customer rates in a general rate proceeding that incorporates in the utility's base rates . . . eligible costs previously reflected in an ISRS." *See also* 4 CSR 240-3.265(18) (stating the same). The plain language in section 393.1015.6(1) clearly refers to one ISRS, as evidenced by the statement "shall file revised rate schedules to reset *the ISRS* to zero." (Emphasis added.)

Based on the foregoing, we find that the Commission's interpretation of the contested statute is reasonable and is consistent with the clear legislative intent. The Commission did not err in finding that it was not prohibited from approving the change to Laclede's existing ISRS

13

more than three years after the last rate case decision because it had not been three years since the ISRS was established. Public Counsel has not satisfied its burden of demonstrating that the Commission's order is invalid.

## Conclusion

The Commission's order granting Laclede's petition for an increase to its ISRS is not unlawful. We, therefore, affirm the decision of the Commission.

 /s/ JAMES EDWARD WELSH
James Edward Welsh, Chief Judge

All concur.