STATE of Missouri ex rel. MOGAS
PIPELINE LLC, Respondent,

v.

MISSOURI PUBLIC SERVICE
COMMISSION, Appellant.

No. SC 91968.

Supreme Court of Missouri,
En Banc.

April 17, 2012.

Jennifer Leigh Heintz, Jefferson City, for The Commission.

Gerard T. Carmody, David H. Luce, and Teresa Dale Pupillo, Carmody MacDonald PC, St. Louis, Leland B. Curtis and Carl Lumley, Curtis, Heinz, Garrett & O'Keefe PC, St. Louis, for MoGas.

LAURA DENVIR STITH, Judge.

MoGas Pipeline, LLC, seeks review of the Missouri Public Service Commission's (PSC) order denying MoGas' request that the PSC terminate its intervention in matters pending before the Federal Energy Regulatory Commission (FERC). Be-

cause this Court finds that the PSC has no authority to intervene as a party in proceedings before the FERC, this Court affirms, as modified, the circuit court's judgment that the PSC's order was unlawful.

## I. FACTUAL AND PROCEDURAL BACKGROUND

MoGas operates an interstate natural gas pipeline delivering natural gas to customers in Missouri. The company was organized formally in 2008 after the FERC approved the merger of three affiliated gas pipeline systems. Prior to the merger, two of MoGas' predecessors, Missouri Gas Company, LLC, and Missouri Pipeline Company, LLC, operated pipelines only in Missouri; therefore, they were subject to the jurisdiction of the PSC. MoGas' third predecessor company, Missouri Interstate Gas, LLC, operated an interstate natural gas pipeline and, pursuant to the federally enacted Natural Gas Act, was subject to the jurisdiction of the FERC.[1] *See Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300–01, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988) ("The [Natural Gas Act] confers upon FERC exclusive jurisdiction over the transportation and sale of natural gas in interstate commerce for resale."). Because the merger created a single natural gas pipeline system with interstate operations, MoGas' entire system became subject to FERC's jurisdiction in 2008.

Throughout 2007 and 2008,[2] MoGas submitted various petitions to the FERC for approval including, as relevant here, proposals to construct and operate new compression facilities on its systems and to modify its gas tariffs. In both instances, the PSC intervened as a party in the related FERC proceedings to protest MoGas' proposals. In September 2008,[3] MoGas filed a petition with the PSC alleging that the PSC did not have authority to intervene in matters before the FERC. As such, the petition requested that the PSC terminate its intervention in FERC cases concerning MoGas' operations. The PSC denied MoGas' petition by an order issued in July 2009.

After the PSC denied MoGas' subsequent application for a rehearing, MoGas filed a petition for writ of review in the circuit court of Cole County. In March 2010, the circuit court entered judgment holding the PSC's July 2009 order unlawful. The court reversed the order and remanded the cause to the PSC for further action. The PSC appeals the circuit court's judgment.

## II. STANDARD OF REVIEW

■ "This Court reviews the decision of the PSC rather than that of the circuit court." *State ex rel. Praxair, Inc. v. Missouri Pub. Serv. Comm'n,* 344 S.W.3d 178, 184 (Mo. banc 2011). "[T]he appellate standard of review of a PSC order is two-pronged: 'first, the reviewing court must determine whether the PSC's order is lawful; and second, the court must determine

1. The company's formation commenced in 2006, when MoGas' three predecessor companies filed a joint petition with the FERC to consolidate their operations. *See Missouri Pub. Serv. Comm'n v. Missouri Interstate Gas, LLC,* 266 S.W.3d 881, 883 (Mo.App.2008). The FERC authorized the merger effective June 1, 2008. *Id.* at 885.

2. Though the FERC did not issue its formal approval of MoGas' formation until 2008,

FERC procedures allow it to review petitions regarding a pipeline's proposed operations prior to the time its formation officially is authorized.

3. MoGas' original petition, filed in September 2008, was supplemented twice and amended once. The amendment, filed February 5, 2009, incorporated all previous filings. For convenience, these various submissions are referred to collectively as "the petition."

whether the order is reasonable.' " *State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n,* 120 S.W.3d 732, 734 (Mo. banc 2003), *quoting State ex rel. Atmos Energy Corp. v. Pub. Serv. Comm'n,* 103 S.W.3d 753, 759 (Mo. banc 2003).

■ "The lawfulness of a PSC order is determined by whether statutory authority for its issuance exists, and all legal issues are reviewed *de novo.*' " *AG Processing, Inc.,* 120 S.W.3d at 734. A PSC order is reasonable " 'where the order is supported by substantial, competent evidence on the whole record; the decision is not arbitrary or capricious[;] or where the [PSC] has not abused its discretion.' " *Praxair, Inc.,* 344 S.W.3d at 184, *quoting Envtl. Utils., LLC v. Pub. Serv. Comm'n,* 219 S.W.3d 256, 265 (Mo.App.2007). This Court need not reach the issue of an order's reasonableness if it finds the order unlawful. *See State ex rel. Util. Consumers' Council of Missouri, Inc. v. Pub. Serv. Comm'n,* 585 S.W.2d 41, 47 (Mo. banc 1979).

### III. THE PSC'S ORDER WAS UN-LAWFUL

#### A. The PSC's Authority is Limited to that Granted It by the Legislature and Not Preempted by Congress

■ The PSC "is a creature of statute and can function only in accordance with" its enabling statutes. *State ex rel. Monsanto Co. v. Pub. Serv. Comm'n,* 716 S.W.2d 791, 796 (Mo. banc 1986). Its "powers are limited to those conferred by ... statutes, either expressly, or by clear implication as necessary to carry out the powers specifically granted." *Util. Consumers' Council of Missouri, Inc.,* 585

S.W.2d at 49; *see also* § 386.040 [4] (creating the PSC and vesting it with "the powers and duties ... specified, and also all powers necessary or proper to enable it to carry out fully and effectually all the purposes" of its governing statutes). If a power is not granted to the PSC by Missouri statute, then the PSC does not have that power.

■ Though section 386.610 provides that statutes pertaining to the PSC "shall be liberally construed with a view to the public welfare," this provision does not authorize the Court to vest the PSC with authority that the legislature has not granted it either expressly or by clear implication. *Cf. Reichert v. Bd. of Educ. of City of St. Louis,* 217 S.W.3d 301, 305 (Mo. banc 2007) ("[T]he Court has no authority to read into a statute legislative intent contrary to the intent made evident by the plain language.").

The powers and duties of the PSC are set forth principally in chapter 386. As pertains to natural gas, section 386.250 extends the PSC's jurisdiction "[t]o the manufacture, sale or distribution of gas, natural and artificial ... *within the state,* and to persons or corporations owning leasing, operating or controlling the same; and to gas and electric plants, and to persons or corporations owning, leasing, operating or controlling the same." § 386.250(1) (emphasis added).

As the Missouri legislature has recognized in section 386.030, those powers granted to the PSC by Missouri statute are limited by the doctrine of preemption as to matters affecting interstate commerce.[5] Congress has preempted regula-

---

**4.** All statutory references are to RSMo 2000 unless otherwise noted.

**5.** Section 386.030 states:

Neither this chapter, nor any provision of this chapter, except when specifically so stated, shall apply to or be construed to apply to commerce with foreign nations or commerce among the several states of this

tion of interstate gas pipelines by providing authority for such regulation to the FERC pursuant to the Natural Gas Act. *See* 15 U.S.C. § 717; *Schneidewind*, 485 U.S. at 300–01, 108 S.Ct. 1145. As noted earlier, all parties agree that MoGas is an interstate gas pipeline subject to regulation by the FERC. Therefore, the PSC has authority to act as to MoGas only (1) as it specifically is granted such authority by Missouri statute and (2) as permitted by FERC regulations and other federal law.

**B. The Missouri Legislature Has Neither Expressly Nor by Clear Implication Authorized the PSC to Intervene in FERC Proceedings**

Though the PSC alleges that several provisions within both state and federal law can be interpreted to vest the PSC with authority to intervene in FERC proceedings, for the reasons detailed below, the PCS's arguments are unavailing.

**1. Section 386.210.1**

First, the PSC cites section 386.210.1,[6] which states:

The [PSC] *may confer* in person, or by correspondence, by attending conventions, *or in any other way*, with the members of the public, *any* public utility or *similar commission of this and other states and the United States of America*, or any official, agency or instrumentality thereof, on any matter relating to the performance of its duties.

(emphases added). The PSC asserts that because section 386.210.1 authorizes the PSC to confer with other similar commissions, this means that it can intervene in matters before the FERC because: (1) the FERC is a commission of the United States that is similar to the PSC and (2)

union, except insofar as the same may be permitted under the provisions of the Constitution of the United States and the acts of Congress.

intervention in FERC proceedings is "[an-]other way" by which the PSC may "confer" with the FERC.

The PSC's argument depends entirely on interpreting the word "confer" to include intervention by the PSC as a party in a regulatory proceeding of another state or the federal government. The PSC cites no published case or other direct authority of any kind in support of this interpretation of the word "confer." Indeed, it concedes that this is a matter of first impression and that were this Court to interpret the PSC's authority to confer with other commissions to include the power to intervene, it would be the first court to do so.

The PSC nonetheless says that this Court should find intervention as a party in a federal regulatory proceeding is a form of "conferring" with that federal regulatory body because some other state public utility commissions also intervene with no more authority than this and, so, the PSC also should be permitted to do so.

■ But the PSC admits that the authority of these other commissions to intervene has not been challenged, just as the authority of Missouri's PSC to do so was not challenged until the instant case, nor has the PSC cited any governing authority from other state commissions specifically interpreting the word "confer" to encompass intervention as a party in FERC proceedings. The PSC's power and authority proceeds from Missouri statutes. While a review of the reasoning of other states in permitting such intervention would have been informative had there been any such cases, there are none, and the unchallenged conduct of other state regulatory agencies provides no au-

6. All references related to section 386.210 are to RSMo Supp.2003.

thority for the PSC to act beyond its statutory powers. This Court, therefore, turns to the words of the PSC's governing statutes, for it is this Court's duty to ascertain the intent of the Missouri legislature from the language it used in drafting section 386.210.1. *See State ex rel. Nixon v. Karpierz,* 105 S.W.3d 487, 489–90 (Mo. banc 2003).

■ In considering whether the word "confer" as used in section 386.210.1 includes the right to intervene, the Court notes that the word is not defined in chapter 386. Accordingly, this Court begins with the well-established principle that "[i]n the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary." *State v. Oliver,* 293 S.W.3d 437, 446 (Mo. banc 2009).

■ The verb "confer" means to contribute, to compare, or "to hold conversation or conference ... typically on important, difficult, or complex matters." *Webster's Third New International Dictionary 475 (1993).* None of these terms encompass or overlap the meaning of the term "intervene," which means "to become a party to an action or other legal proceeding begun by others for the protection of an alleged interest." *Id.* at 1183.

"Intervention" is a legal term, however, so review of the meaning of "confer" and "intervene" in legal dictionaries might be expected to be more helpful. *Black's Law Dictionary* does not define the word "confer" but defines "intervene" as "[t]he entry into a lawsuit by a third party who, despite not being named a party to the action, has a personal stake in the outcome." *Id.* at 897 (9th ed.2009). Other legal dictionaries

draw a clear distinction between the terms "confer" and "intervene." *See, e.g.,* W. Statsky, *West's Legal Thesaurus/Dictionary 168, 424 (1986)* (defining "confer" as "to consult" and "intervene" as "interfere" or "encroach").

Synonyms of "confer" have been expressed variously as "[c]ompare notes, discuss, deliberate, discourse, talk, talk over, consult, palaver, confide, parley, advise counsel, negotiate," *West's Legal Thesaurus/Dictionary at 168,* and as to advise, compare opinions, consult with, interchange views and talk over. W. Burton, Legal Thesaurus 98 (1980). The synonyms of "intervene" are "become a party to an action," "intercede" and "step in." *Id.* at 294. As is evident, the term "confer" does not include within its definition or its synonyms the word "intervene" or any similar concept, and visa versa.

Moreover, section 386.210 itself indicates that it uses the term "confer" in the sense of "communicate," for section 386.210.2 refers collectively to the various ways of conferring with the public or other commissions permitted in section 386.210.1 as "communications." [7] "Communication" is "the act or action of imparting or transmitting" and the "interchange of thoughts or opinions." *Webster's Third New International Dictionary 460 (1993); see also Black's Law Dictionary 316 (9th ed.2009)* (defining "communication" as an "expression or exchange of information by speech, writing, gestures, or conduct").

Nowhere in these definitions is there support for the PSC's view that in permitting the commission to "confer" or "communicate" with the FERC, section 386.210.1 expressly or by clear implication authorizes the PSC to intervene as a party

---

7. Sections 386.210.3 and 386.210.4 also use the term "communication" to describe the interaction permitted by section 386.210.1.

in FERC proceedings. Intervening parties do more than communicate, converse, discuss, consult or engage in an interchange of opinions about pending proceedings. Rather, intervenors exercise control over litigation by engaging in oral arguments, presenting evidence and cross-examining witnesses. *Matter of Additional Magistrates for St. Louis Cnty.*, 580 S.W.2d 288, 293–94 (Mo. banc 1979). Indeed, the PSC admits that the very reason it intervenes in FERC proceedings is to reap the benefits of being an intervening party.

Parties who appear at oral argument or who file briefs are not "conferring" with the court. One who seeks to intervene before the FERC in order to file a brief or to engage in oral argument is not "conferring" with the FERC in any normal sense of the word. It is seeking affirmative relief; it is obtaining a stake in the controversy. If the PSC simply wishes to communicate its views to the FERC, it would do so not as a party, but as an interested body, in a role akin to amicus curiae. But the PSC wants to do more than this; it wishes the benefit of being a party because it believes this would be beneficial to Missouri consumers. To the extent this is true, the PSC should apply to the legislature for authority to intervene in FERC proceedings—and indeed, the parties indicate that it is in the course of seeking such express authority.

Because "confer" carries none of the connotations of power and control associated with intervention, the right to confer with the FERC given the PSC by section 386.210.1, cannot reasonably be construed to include intervention. In the absence of such authority, section 386.210.1 can be read only to authorize the PSC to "confer" with commissions similar to the FERC by contributing its opinion "for the purpose of assisting the [commissions] in cases of general public interest." 3B C.J.S. Amicus Curiae § 1 (2003). Just as an amicus is not made a party simply by virtue of the fact that it has information that may be useful to the proceedings, the PSC may not assume the role of an intervening party merely because the legislature has authorized it to "confer" with the FERC.

### 2. Section 386.210.7

The PSC asserts that even if section 386.210.1 does not vest the commission with the right to intervene in FERC actions, such authorization can be found in its authority to engage in joint investigations with other public utility commissions under section 386.210.7, which provides, in pertinent part:

> The [PSC] may make joint investigations, hold joint hearings within or without the state, and issue joint or concurrent orders in conjunction or concurrence with any railroad, public utility or similar commission, of other states or the United States of America, or any official, agency or any instrumentality thereof. . . .

The PSC's argument ignores the distinction between being a party to an action and being the adjudicator of that action. Implicit in the use of the word "joint" is that the PSC must be acting in concert with its counterpart commission in conducting these investigations or hearings. *See Black's Law Dictionary 913 (9th ed.2009)* (defining "joint" as "combined, united, or sharing with another"); *W. Statsky, West's Legal Thesaurus/Dictionary 436 (1986)* (defining "joint" as "[s]hared by or between two or more" and listing as synonyms the words "collaborative, combined, concerted, common, acting in common, allied, united").

When the PSC intervenes in a FERC proceeding, it does not intervene as a second judge, sitting with the FERC and

ruling on matters presented by the parties. It intervenes as a party in the proceedings. As an intervenor, the PSC functions as an interested litigant rather than as a neutral adjudicator.

A party and a judge do not "jointly" investigate or hold hearings, any more than a party appearing at oral argument in this Court is holding a hearing "jointly" with this Court. The party appears at a hearing and presents a case, which the court adjudicates. Similarly, while section 386.210.7 clearly authorizes the PSC to investigate matters or hold hearings jointly with the FERC or other regulatory agencies, the conduct at issue here was not the holding of a joint investigation or hearing but an attempt to become an additional party to a regulatory hearing before the FERC. Nothing in section 386.210.7 authorizes the PSC to assume such a role.[8]

### 3. *Sections 386.120.4 and 386.071*

In the absence of any other statutory provision granting the PSC power to intervene in matters before the FERC, the PSC suggests that the fact that it has the authority to "sue and be sued in its official name," *see* § 386.120.4, and the fact that section 386.071 authorizes the PSC's general counsel to intervene in proceedings

involving any question under chapter 386 "if directed to do so by the commission"[9] empowers the commission to intervene in FERC matters as well.

 The PSC's argument fails to acknowledge that it cannot direct its general counsel to engage in an activity the legislature has not authorized the PSC itself to undertake. Stated differently, the general counsel's authority under section 386.071 can extend no further than the PSC's own power. Section 386.071 expressly states that the PSC's general counsel may only "prosecute in the name of the state" when "authorized by law." § 386.071 (emphasis added). Chapter 386 authorizes the PSC to bring actions concerning utilities subject to its jurisdiction, and its general counsel may intervene in actions involving questions related to that chapter. *See, e.g., McBride & Son Builders, Inc. v. Union Elec. Co.,* 526 S.W.2d 310 (Mo.1975) (the PSC intervened in a suit because it had issued an order prohibiting a utility company from making certain payments plaintiff claimed it had a right to receive from defendant). Were chapter 386 to contain a provision authorizing the PSC to intervene in proceedings before the FERC, the PSC would be correct in asserting that section

---

**8.** While the PSC again supports its position by noting that several state commissions intervene in matters before the FERC on the basis of authority no greater than statutes similar to section 386.210.7 that permit them to conduct joint investigations or hearings, *see, e.g.,* Colo. Rev.Stat. § 40–2–115; Del.Code Ann. tit. 26, § 214; Idaho Code Ann. § 61–505, the PSC again cites no case interpreting a similar statute to authorize intervention as a party or holding that a party and a judge in a suit are "jointly investigating" or holding a "joint hearing." Rather, it again concedes that this Court would be the first to authorize such conduct under a statute permitting joint investigations and hearings. This Court declines to so hold.

**9.** Section 386.071 provides, as pertinent:

The [PSC] may appoint ... a general counsel to serve at the pleasure of the commission.... It shall be the duty of the general counsel for the commission to represent and appear for the commission in all actions and proceedings involving any question under this or any other law, or under or in reference to any act, order, decision or proceeding of the commission, and if directed to do so by the commission, to intervene, if possible, in any action or proceeding in which any such question is involved; to commence and prosecute in the name of the state all actions and proceedings, authorized by law and directed or authorized by the commission, and to expedite in every way possible, to final determination all such actions and proceedings....

386.071 then would permit the commission's general counsel to intervene on the PSC's behalf in that forum also. But, in merely specifying the authority of the PSC's general counsel, section 386.071 in no way expands the PSC's powers beyond those set forth in the remaining sections of chapter 386. As noted, no provision within chapter 386 vests the PSC with authority to intervene in FERC proceedings.

## IV. FEDERAL LAW

 Finally, the PSC notes that 18 C.F.R. § 385.214(a)(2) of the FERC regulations permits state public utility commissions to intervene in FERC matters. It provides that "[a]ny State Commission ... is a party to any [FERC] proceeding upon filing a notice of intervention in that proceeding, if the notice is filed" timely. This provision is necessary for intervention to be allowed for those states that have statutes permitting such intervention, of course, as in the absence of such a provision, preemption would prohibit it. *See* 15 U.S.C. § 717.[10] But the FERC does not and cannot give Missouri's regulatory agency power that it has not been granted by Missouri's legislature. Federal permission to intervene is not equivalent to authority to intervene. Rather, as explained above, the Missouri legislature also must grant the PSC the right to intervene. Accordingly, the PSC erred in denying Mo-

Gas' request that it terminate its intervention in FERC proceedings.

## V. CONCLUSION

For the reasons set forth above, this Court holds that the PSC has no authority to intervene in matters pending before the FERC. Finding that no remand to the PSC is necessary, this Court modifies the circuit court's judgment, pursuant to Rule 84.14, to eliminate that requirement. As modified in this manner, the circuit court's judgment is affirmed.

BRECKENRIDGE and FISCHER, JJ., and PAGE, Sp.J., concur.

DeMARCE, Sp.J., dissents in separate opinion filed.

TEITELMAN, C.J., and DRAPER, J., concur in opinion of DeMARCE, Sp.J.; RUSSELL and PRICE, JJ., not participating.

KARL DeMARCE, Special Judge, dissenting.

Because the principal opinion denies the Public Service Commission the full range of action contemplated by section 386.210.1 [1] in selecting its methods for communicating its concerns, as to matters within its lawful sphere of activity, to the Federal Energy Regulatory Commission, I respectfully dissent.[2]

---

10. Indeed, on the basis of 18 C.F.R. § 385.214(a)(2), several state legislatures have enacted statutes permitting state public service commissions to intervene in FERC proceedings. *See, e.g.,* CONN. GEN.STAT. § 16–2a; OR.REV.STAT. § 756.040. Importantly, though the PSC previously has sought such authority, the Missouri legislature thus far has declined to similarly permit it to intervene in FERC matters. *See* S.B. 897 and H.B.2095, 95th Gen. Assem. (2010) (constituting a failed attempt to enact legislation that would have given the PSC authority to "appear and participate in any federal or state administrative, regulatory, or judicial proceeding"); *Oster-*

*loh's Estate v. Carpenter*, 337 S.W.2d 942, 946 (Mo.1960) ("[This Court] may take notice of ... attempts to enact legislation.").

1. All statutory references are to RSMo 2000 unless otherwise noted.

2. This Court transferred this case after an opinion by the Missouri Court of Appeals, authored by the Honorable Joseph M. Ellis. Mo. Const. article V, section 10. Portions of the court of appeals opinion are incorporated without further attribution.

The principal opinion correctly finds this to be a case of first impression, presenting a question of statutory interpretation. Further, the principal opinion rightly concludes that sections 386.210.7, 386.120.4, and 386.071, on their own, do not provide authority to support the PSC's intervention in FERC proceedings. However, I cannot join in the conclusion that section 386.210.1 is too narrow in its scope to grant the authority claimed by the PSC to intervene in proceedings before the FERC.

Section 386.610 requires that statutes pertaining to the PSC "shall be liberally construed with a view to the public welfare, efficient facilities and substantial justice between patrons and public utilities." The PSC's powers "are limited to those conferred by ... statutes, either expressly, or by clear implication as necessary to carry out the powers specifically granted." *State ex rel. Utility Consumers' Council of Missouri, Inc. v. Pub. Serv. Comm'n,* 585 S.W.2d 41, 49 (Mo. banc 1979). However, the "interpretation and construction of a statute by an agency charged with its administration is entitled to great weight." *State ex rel. Sprint Missouri, Inc. v. Pub. Serv. Comm'n,* 165 S.W.3d 160, 164 (Mo. banc 2005).

Sections 386.210 through 386.380 address the powers and duties of the PSC. Section 386.210.1 provides that the PSC "may confer in person, by correspondence, by attending conventions, *or in any other way,* with ... any public utility or similar commission of this and other states and the United States of America, or any official, agency or instrumentality thereof, *on any matter relating to the performance of its duties.*'" (emphasis added). Section 386.210.2 states that "[s]uch communication may address any issue that at the time of such communication is not the subject of a case that has been filed with

the [PSC]." The subject of MoGas' tariff is not the subject of any case before the PSC. As such, the PSC clearly is empowered to communicate with the FERC in any way about any matter related to the performance of its duties.

In reaching the conclusion that section 386.210.1 does not grant the PSC authority to intervene in proceedings before the FERC, the principal opinion notes that "the verb 'confer' means to contribute, to compare, or 'to hold conversation or conference ... typically on important, difficult, or complex matters." Op. at 498. This analysis follows:

"Moreover, section 386.210 itself indicates that it uses the term 'confer' in the sense of 'communicate,' for section 386.210 refers collectively to the various ways of conferring with the public or other commissions permitted in section 386.210.1 as 'communications.' 'Communication' is 'the act of imparting or transmitting' and the 'interchange of thoughts or opinions.' *Webster's Third New International Dictionary* 460 (1993); *see also Black's Law Dictionary* 316 (9th ed.2009) (defining 'communication' as an 'expression or exchange of information by speech, writing, gestures, or conduct')."

*Id.* at 498. Further, in footnote 7, the principal opinion recognizes, "Sections 386.210.3 and 386.210.4 also use the term 'communication' to describe the interaction permitted by section 386.210.1."

Having set forth the very broad definition of "communication" found in *Webster's* and *Black's,* the principal opinion then proceeds effectively to narrow that definition by concluding that intervention as a party in litigation is not a form of "communication," stating: "Intervening parties do more than communicate, converse, discuss, consult, or engage in an interchange of opinions about pending proceedings.

Rather, intervenors exercise control over litigation by engaging in oral arguments, presenting evidence, and cross-examining witnesses." Op. at 499. The opinion concludes that these activities do not constitute "conferring" with a court, but rather "seeking affirmative relief ... [and] obtaining a stake in the controversy." *Id.*

The principal opinion thereby confuses *the purpose of communication* with *the forms that communication may take.* Obviously, the purpose of intervention is to persuade, or at least to influence, the decision-maker, in the hope of making a difference as to the outcome of the case. This does not make intervention any less a form of communication, since persuasion is often a primary goal of any attempt to communicate. The various activities associated with intervention—filing pleadings and motions, presenting evidence, examining witnesses, engaging in oral argument, submitting briefs—are all designed and calculated to impart information, data, and opinions to the adjudicator. This goes to the very heart of the *Webster's* and *Black's* definitions of "communication" relied upon by the principal opinion.

Moreover, intervention is the precise form of "communication" that the intended recipient, the FERC, expects and invites from a state utility regulator such as the PSC, with regard to a formal contested proceeding. *See* 18 C.F.R. § 385.102(b) and (c) (defining "party" and "participant" in such a proceeding); 18 C.F.R. § 385.214(a)(2) (contemplating intervention by state commissions in such proceedings). This approach is altogether consistent with the FERC's concern to limit inappropriate "off the record" communications, much as our courts forbid inappropriate *ex parte* communications. 18 C.F.R. § 385.2201; *cf.* Rule 2–2.9. The mere fact that the FERC has chosen to permit other defined forms of communication from or with state

commissions, such as "protests," 18 C.F.R. § 385.211, and "conferences," 18 C.F.R. § 385.1303, does not suggest that intervention, with all the specific activities embraced therein, may not also be a valid form of "communication."

The verb "confer," and the related noun "conference," often connote a very formal setting, in which detailed notes or minutes may be kept, or a verbatim record made. In the context of formal adjudication, it may not be the most common usage to suggest that parties to a proceeding are "conferring" with the decision-maker. Yet one readily may point to exceptions. When attorneys approach the court during trial to discuss an issue of law, procedure, or evidence, it commonly is referred to as a "bench conference." When attorneys meet with the court to finalize the instructions to be given to a jury, it commonly is referred to as an "instruction conference." These examples serve only to demonstrate further that having the opportunity to "confer"—to communicate—with the adjudicator is intrinsically part and parcel of any participation in litigation. Not only is intervention in an administrative or adjudicatory proceeding a form of "communication," but it is also the most clearly recognized and most acceptable form of holding "conversation or conference" on the "important, difficult, or complex matters" that may come before the FERC. Intervention falls squarely within the definition of "confer" first cited in the principal opinion.

Thus, while section 386.210.1 does not explicitly grant the PSC the authority to assume the position of a party to a hearing before a federal regulatory commission such as the FERC, when construed with a view to the public welfare, the authority of the PSC to participate in such a manner clearly is implied. Certainly, the PSC's participation in the action would appear to be the most expedient way for the PSC to

communicate its concerns in the matter to the FERC.

To draw the conclusion set forth in the principal opinion is to place an unwarranted gloss on section 386.210.1, rendering it in effect to provide that the PSC "may confer [with the FERC] in person, by correspondence, by attending conventions, or in any other way, *except in the one way most likely to prove efficacious in sharing the PSC's data, information, expertise, and opinions in the context of a formal administrative proceeding before the FERC*" The statute does not so limit the authority of the PSC.

Section 386.510 requires the reviewing court to determine whether the PSC's order is lawful and, if so, whether the order is reasonable. *State ex rel. Praxair, Inc. v. Missouri Pub. Serv. Comm'n*, 344 S.W.3d 178, 184 (Mo. banc 2011). Having concluded the PSC's order was lawful, I likewise would find the order was reasonable. "Missouri courts have long recognized that when the decision involves the exercise of regulatory discretion, the PSC is delegated a large amount of discretion, and many of its decisions necessarily rest largely in the exercise of a sound judgment." *State ex rel. Sprint Missouri, Inc.*, 165 S.W.3d at 164 (internal citation omitted).

Here, the PSC's order upholding its authority to intervene in the FERC proceedings concerning MoGas was reasonable in that the PSC was presenting evidence to enable the FERC to make a more informed decision regarding rates and related matters. Therefore, I would affirm the order of the PSC and permit the PSC to continue to intervene in matters before the FERC relating to MoGas and others.