**STATE of Missouri ex rel. MoGAS PIPELINE LLC, Appellant,**

v.

**PUBLIC SERVICE COMMISSION of the State of Missouri, Kevin Gunn Chairman, Robert Clayton III, Jeff Davis, Terry Jarrett, and Robert Kenney, Commissioners, Respondents,**

**Union Electric Company d/b/a Ameren Missouri, Respondent.**

**No. WD 75109.**

Missouri Court of Appeals, Western District.

Jan. 15, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 5, 2013.

Application for Transfer to Supreme Court Denied April 30, 2013.

Gerard T. Carmody, David H. Luce, Teresa D. Pupillo and Lauren M. Wacker, St. Louis, MO, for appellant.

Jennifer L. Heintz, Jefferson City, MO, for respondent Public Service Commission.

Michael R. Tripp, Columbia, MO, for respondent Union Electric Company.

Before Division One: THOMAS H. NEWTON, Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

This appeal involves the question of whether a utility can bring a challenge to the lawfulness and constitutionality of tariffs after those tariffs have already been interpreted in an agency order in an earlier action. Because we determine that the lawsuit in this case constitutes a collateral attack on an agency order, we affirm.

### Factual and Procedural History

The question in this case is whether MoGas Pipeline Inc. ("MoGas"), which owns entities that at one time were subject to regulation by the Public Service Commission ("Commission"), properly and timely brought a challenge to the "lawfulness and constitutionality" of tariffs. This second appeal arises from similar facts as in our opinion in *State ex rel. Mo. Pipeline Co. v. Mo. Pub. Serv. Comm'n*, 307 S.W.3d 162 (Mo.App. W.D.2010).[1]

MoGas is an interstate natural gas pipeline regulated by the Federal Energy Regulatory Commission ("FERC"). MoGas was created from the combination of two intrastate natural gas pipelines, Missouri Pipeline Company, LLC ("MPC") and Missouri Gas Company, LLC ("MGC"), and one interstate pipeline, Missouri Interstate Gas, LLC ("MIG"). MPC and MGC were

---

1. Portions of the Factual and Procedural History herein are adopted from our earlier opinion without further attribution.

at one time regulated by the Commission. MIG was a separate interstate pipeline regulated by FERC. All three gas companies had common ownership.

While the MPC and MGC were under the Commission's authority, they operated under tariffs that had been approved by the Commission. Also during part of that time, MPC and MGC had a non-regulated gas marketing and shipping affiliate named Omega Pipeline Company ("Omega").

The Staff of the Commission ("Staff") filed a complaint against MPC and MGC, alleging that both companies had engaged in tariff violations involving their relationship with Omega while they were under the Commission's regulatory purview.

Relevant to this appeal, part of the challenge surrounded what is denominated as section 3.2(b) of both utilities' tariffs. That section provides MPC and MGC with the ability to discount rates within a pre-established range. However, consistent with section 393.140(5),[2] the tariffs preclude MPC and MGC from discriminating in favor of an affiliate. Under section 3.2(b)(1), "the lowest transportation rate charged to an affiliate shall be the maximum rate that can be charged to non-affiliates." Sections 3.2(b)(2)–(5) establish the procedure by which MPC and MGC can obtain an exception to the section 3.2(b)(1) rule: they could request Commission approval of specific agreements charging a lower rate to an affiliate shipper. Sections 3.2(b)(2)–(5) also set out how the Commission will compare rates to determine whether a lower rate for affiliates will be approved.

After a hearing, in 2007, the Commission entered a Revised Rule and Order ("RRO") finding that MPC and MGC had: (1) provided confidential information and/or preferential treatment to their affiliate, Omega, (2) charged Omega transportation rates that were lower than the transportation rates that they charged non-affiliate customers, and (3) failed to report the discounted rates that they charged Omega.

On appeal, this Court affirmed, determining that the Commission's order was lawful and reasonable. *Mo. Pipeline*, 307 S.W.3d 162. In so affirming, this Court addressed a number of challenges, three of which related to unauthorized ratemaking, again at issue in the appeal at bar. First, we determined that the Commission did not act unlawfully in declaring that MPC and MIG could only have charged non-affiliates the lowest rate they charged Omega under section 3.2(b)(1) of the tariffs. Second, we determined that the Commission did not make a new rate and accordingly was not required to go through a new ratemaking procedure. Rather, we determined that the Commission had established two rate schemes in the tariff and that it properly exercised its authority in determining which rate scheme applied to certain customers.

Third, we addressed the argument that the Commission violated the prohibition against automatic rate adjustments in its application of section 3.2(b)(1). This Court determined that the lawfulness of the tariffs had not been challenged by way of the proper statutory mechanism and that we must "deem a tariff lawful unless a lawsuit has been filed whose purpose is to challenge the tariff." *Id.* at 178, citing § 386.270. We noted:

> The Transporters [i.e., MPC and MGC] did not bring a lawsuit challenging the lawfulness of their tariffs. *Indeed, the Transporters themselves explicitly state in their reply brief that the tariffs were*

---

**2.** All statutory references are to RSMo 2000

as supplemented, unless otherwise indicated.

*lawful, reasonable, and established pursuant to a lawful ratemaking process.* Because no lawsuit challenging the lawfulness of section 3.2(b)(1) of the tariffs has been filed, that issue is not properly before us, and we must deem the tariff to be lawful and reasonable.

Accordingly, we hold that the Commission acted lawfully in enforcing the tariffs and in declaring which rate scheme applied to the Transporters' non-affiliate customers. Moreover, the lawfulness of the tariffs is not properly before us, and therefore *we reject without deciding the Transporters' argument that the tariffs contain an unlawful automatic rate adjustment clause.*

307 S.W.3d at 178 (emphases added) (citation omitted).

Because this Court rejected the earlier challenge to the tariffs without deciding the lawfulness of the tariffs, MoGas brought this subsequent action by way of section 386.270 (orders deemed *prima facie* lawful until found otherwise by suit) and section 386.390 (general complaint statute). MoGas asserts in this action that section 3.2(b) of two tariffs that related to MPC and MGC are unlawful and unconstitutional as interpreted by the Commission in the RRO because (1) the RRO effects an automatic rate adjustment as the Commission imposed rate changes without following publishing and compliance requirements, (2) the RRO effects a "retroactive revision" of the rates and therefore violates due process and the filed rate doctrine, (3) the rates as "adjusted" rates were confiscatory.

In this subsequent action, the Commission issued an order dismissing MoGas's complaint in part because it constitutes an impermissible collateral attack on the underlying RRO from 2007 and in part because the Commission determined that it has no jurisdiction to declare "the lawfulness and constitutionality of a provision in the tariffs of two former pipeline companies that are no longer within the jurisdiction of the Commission." The Circuit Court of Cole County affirmed.

Further facts are set forth as necessary.

## Standard of Review

We review the decision of the Commission rather than the decision of the circuit court. *Harter v. Pub. Serv. Comm'n*, 361 S.W.3d 52, 55 (Mo.App. W.D. 2011). "The appellate standard of review of a PSC order is two-pronged: 'first, the reviewing court must determine whether the PSC's order is lawful; and second, the court must determine whether the order is reasonable.'" *State ex rel. MoGas Pipeline, LLC v. Mo. Pub. Serv. Comm'n*, 366 S.W.3d 493, 495–96 (Mo. banc 2012) (internal citations omitted). "'The lawfulness of a PSC order is determined by whether statutory authority for its issuance exists, and all legal issues are reviewed de novo.'" *Id.* (citation omitted). We deem the Commission's order reasonable "'where the order is supported by substantial, competent evidence on the whole record; the decision is not arbitrary or capricious or where the [Commission] has not abused its discretion.'" *State ex rel. Praxair, Inc. v. Mo. Pub. Serv. Comm'n*, 344 S.W.3d 178, 184 (Mo. banc 2011).

## Analysis

MoGas asserts two points of error against the Commission and one point of error against the trial court. In its first two points on appeal, MoGas argues that the Commission erred in determining (1) that the Commission had no jurisdiction to declare the lawfulness of two provisions in the tariffs of two former pipeline companies that are no longer within the jurisdiction of the Commission, and (2) that MoGas's claims were in part barred by

collateral estoppel. In its third point on appeal, MoGas argues that the trial court erred in failing to decide its constitutional claims.

■■■■ Because the issue of collateral estoppel is determinative of MoGas's complained error, we address it first. Section 386.550 states: "In all collateral actions or proceedings the orders and decisions of the commission which have become final shall be conclusive." "If a statutory review of a PSC order is unsuccessful, the order is final and cannot be attacked in a collateral proceeding." *State ex rel. Mid–Mo. Telephone Co. v. Pub. Serv. Comm'n,* 867 S.W.2d 561, 565 (Mo.App. W.D.1993). "So frequently have we held such orders not subject to collateral attack we need not elaborate upon the effect and meaning of these statutes." *State ex rel. State Highway Comm'n v. Conrad,* 310 S.W.2d 871, 876 (Mo.1958). Section 386.550 "is declaratory of the law's solicitude for the repose of final judgments." *State ex rel. Harline v. Pub. Serv. Comm'n of Mo.,* 343 S.W.2d 177, 184 (Mo.App. W.D.1960). "A judgment of a court having jurisdiction cannot be impeached collaterally." *State ex rel. Ozark Border Elec. Coop. v. Pub. Serv. Comm'n of Mo.,* 924 S.W.2d 597, 601 (Mo. App. W.D.1996) (quoting *Harline,* 343 S.W.2d at 184).

At the outset, we note some confusion over which agency order MoGas challenges. It appears MoGas challenges both the Commission's interpretation of the tariff in the RRO and also the very lawfulness of the original tariffs. MoGas's "Complaint and Application" does not completely dispel the confusion. In two of its three counts, it prays for relief from the tariffs, and in one count it seeks relief from the RRO. Specifically, in Count I, MoGas argues that in the RRO, the Commission "declared that section 3.2 of the Tariffs functions to automatically and retroactive-ly adjust ... rates." MoGas also alleged that "the PSC's declaration ... if applied or enforced constitutes an automatic adjustment clause" and "[a]s declared by the PSC in the [RRO], the automatic clause in ... the Tariffs violates due process." MoGas then prays that the Commission declare section 3.2 of the tariffs to be "unlawful, unconstitutional, and void *ab initio.*"

In Count II, MoGas also attacks the RRO. Specifically, MoGas alleges that the Commission "purported to revise retroactively the rates in the [RRO] ... in violation of the Transporters' due process rights." Here, though, MoGas asks the Commission to declare that the rates "set forth in the Tariffs ... as revised, interpreted and applied by the [Commission] in the [RRO] are invalid, unlawful, unconstitutional, void, and of no force and effect."

In Count III, MoGas "objects to the tariff rates declared by the PSC in the [RRO] on the ground that said rates are unlawful and unconstitutional" and the "adjusted Tariff rates ... violate due process in [several] respects." In that count, MoGas asks the Commission to "declare all rates ... invalid, unlawful, unconstitutional, void, and of no force and effect."

Nonetheless, MoGas argues on appeal that "in seeking a ruling that a section of the two tariffs as interpreted and applied are unconstitutional and unlawful, MoGas is not seeking to impeach, void or otherwise attack the RRO." Rather, MoGas argues that it is attacking the constitutionality of the tariffs as interpreted or applied in the RRO.

To support its arguments MoGas relies on *Stopaquila.Org v. Aquila, Inc.,* 180 S.W.3d 24 (Mo.App. W.D.2005) and a Commission order from 2011. In *Stopaquila.Org,* the question was whether a utility regulated by the Commission was exempt from county zoning regulations because

the legislature has given the Commission exclusive regulatory authority over public utilities. 180 S.W.3d at 27. In part, we considered whether certificates of convenience and necessity and other Commission orders issued to the utility specifically authorized construction without the requirement that the utility first obtain county zoning approval. *Id.* In so deciding, we considered the argument that the circuit court's ruling violated section 386.550, where the court had determined that the certificates of convenience and necessity did not constitute the specific authority necessary to exempt the utility from the zoning provisions. Specifically, the Commission asserted that its previous orders and certificates were conclusive and free from collateral attack. *Id.* at 39.

This Court rejected that argument, determining that limiting the authority of Commission orders does not constitute a collateral attack on those orders. *Id.* We further noted that "[s]uch limitation in no way questions the validity of the original order" and that "interpretation of an order necessarily acknowledges its validity and does not constitute a collateral attack." *Id.* (*quoting State ex rel. Pub. Water Supply Dist. No. 2 of Jackson Cnty. v. Burton,* 379 S.W.2d 593, 600 (Mo.1964)).

MoGas argues that it seeks a limitation on the authority of the order and is not attacking its validity. In effect, MoGas appears to argue that it is not challenging the Commission's interpretation of the tariffs so as not to attack collaterally this Court's 2010 opinion, and, at the same time, it argues that it is not seeking to invalidate the RRO so as not to conflict with *Stopaquila.Org.*

■ We agree with the Commission that MoGas's complaint belies these arguments. In its three counts, MoGas prays for various forms of relief, all hinging on the interpretation of the rates set out in

the RRO. Most blatantly, in the second count, the prayer is explicitly for a declaration "that the rates set forth in the Tariffs, as revised, interpreted, and applied by the [Commission] in the [RRO] are *invalid,* unlawful, unconstitutional, void and of no force and effect" (emphasis added). Inasmuch as MoGas argues on appeal that it is not attacking the validity of the RRO, its own complaint indicates otherwise.

*Stopaquila.Org* is not of assistance to MoGas. There, the question was whether a final order authorizing a utility's construction necessarily authorized construction in violation of local zoning laws. The issue of collateral estoppel was not triggered because the validity of the original order was not called into question. In contrast, throughout MoGas's complaint, it has tried to call the validity of the RRO into question.

MoGas further points to a 2011 Commission order, *Missouri Public Comm'n v. Southern Union Company,* File. No. GC–2011–0100, 2011 WL 5831348 (Mo.P.S.C. November 9, 2011) to support its position. In that case, the Commission noted that there is no conflict between tariff procedure and complaint procedure: "Neither suggests exclusivity, neither demands exhaustion before filing the other, and neither attempts to bypass the Commission. In the absence of any clear requirement to choose between a tariff action and a complaint action, the Commission concludes that those procedures are alternatives." MoGas cites the order for the proposition that an original action to change or abrogate an earlier tariff order does not constitute a collateral attack on the tariff order, arguing that it similarly is merely trying to change the tariff order. But here, the subsequent litigation is quite clearly not brought by the Staff to change a tariff (as it was in *Southern Union* ); rather, it is an

attempt to attack the interpretation set out in an RRO. *Southern Union* is inapposite.

To the extent MoGas might have challenged the lawfulness or constitutionality of the tariffs themselves, we note that it had not brought suit on the tariffs, which had been in effect since the 1990s. And MoGas had no challenge to those tariffs as of its last appeal to this Court in 2010, where it even stated in its reply brief that "the tariffs were lawful, reasonable, and established pursuant to a lawful ratemaking process."

 Inasmuch as MoGas would have wanted to bring a challenge pursuant to section 386.270 earlier, we see no reason why it could not have brought an action during the pendency of the Complaint brought by Staff. At oral argument before this Court, MoGas conceded that it could have brought the action by way of section 386.270 in the earlier action. The various questions could have then been considered together. As noted in *Southern Union*, there is no exhaustion requirement before filing such action. And constitutional challenges must be raised at the first available opportunity. *Ford Motor Credit Co. v. Hous. Auth. of Kansas City, Mo.*, 849 S.W.2d 588, 592 (Mo.App. W.D. 1993) (properly raising a constitutional question must be done at first available opportunity and constitutional questions must be preserved throughout for appellate review).

 Finally, interpreting section 386.270 to allow the lawfulness of tariffs to be challenged at any point after a Commission order has become final would allow parties multiple chances to attack an order, resulting in potentially endless litigation. Such a reading, moreover, would effectively render section 386.550 meaningless. This we cannot do. "[S]tatutory provisions are 'not read in isolation but [are] construed together, and if reasonably possible, the provisions will be harmonized with each other.'" *Brinker Mo., Inc. v. Dir. of Revenue,* 319 S.W.3d 433, 437 (Mo. banc 2010); *Evans v. Empire Dist. Elect. Co.,* 346 S.W.3d 313, 318 (Mo.App. W.D. 2011) (statutes are to be harmonized when possible).

Because we find MoGas's suit a violation of section 386.550, which prohibits collateral attacks of final orders and decisions of the Commission, we affirm.

All concur.