

# In the Missouri Court of Appeals
## Western District

IN THE MATTER OF THE VERIFIED )
APPLICATION and PETITION OF )
LIBERTY ENERGY (MIDSTATES) CORP )
d/b/a LIBERTY UTILITIES TO CHANGE )
ITS INFRASTRUCTURE SYSTEM )
REPLACEMENT SURCHARGE, )
)
MISSOURI PUBLIC SERVICE )
COMMISSION, )
                        Respondents, )
v. )               **WD77089**
)
THE OFFICE OF PUBLIC COUNSEL, )      **FILED: July 29, 2014**
                       Appellant. )

## APPEAL FROM THE PUBLIC SERVICE COMMISSION

### BEFORE DIVISION ONE: MARK D. PFEIFFER, PRESIDING JUDGE, LISA WHITE HARDWICK AND GARY D. WITT, JUDGES

The Office of the Public Counsel appeals from the Missouri Public Service

Commission's order approving the request of Liberty Energy (Midstates) Corp. d/b/a/

Liberty Utilities ("Liberty") to change its Infrastructure System Replacement Surcharge

("ISRS"). Public Counsel contends the Commission's order is unlawful because it

allows Liberty to recover costs that are not authorized by the ISRS statutes. For

reasons explained herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

The Commission is the state administrative agency responsible for regulating public utilities, including gas corporations, in Missouri. *In re Laclede Gas Co.*, 417 S.W.3d 815, 817 (Mo. App. 2014). Liberty is a Missouri corporation and a natural gas provider. It is a "gas corporation" and "public utility" under Sections 386.020(18) and (43), RSMo Cum. Supp. 2013,[1] and, therefore, is subject to the Commission's regulatory power. *Id.* Public Counsel is a state agency that has the discretion to represent the interests of consumers in all utility proceedings before the Commission and in all appeals of Commission orders. *Id.*

In 2012, Liberty purchased substantially all of the assets that Atmos Energy Corporation ("Atmos") used to provide natural gas and transportation services in Missouri. The Commission issued new certificates of convenience and necessity to Liberty for the service areas formerly served by Atmos, and the Commission approved Liberty's adoption of Atmos's tariffs.

Among the tariffs that Liberty adopted were Atmos's ISRS tariffs for each of its three rate districts. The ISRS statutes, Sections 393.1009, 393.1012, and 393.1015, provide a method for gas corporations to recover eligible infrastructure system replacement costs between general rate cases through a surcharge on their customers' bills. Section 393.1009(3) defines "eligible infrastructure system replacements" as gas utility plant projects that:

(a) Do not increase revenues by directly connecting the infrastructure replacement to new customers;

(b) Are in service and used and useful;

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement.

(c) Were not included in the gas corporation's rate base in its most recent general rate case; and

(d) Replace or extend the useful life of an existing infrastructure[.]

Section 393.1009(5) defines "gas utility plant projects," in pertinent part, as:

(a) Mains, valves, service lines, regulator stations, vaults, and other pipeline system components installed to comply with state or federal safety requirements as replacements for existing facilities that have worn out or are in deteriorated condition;

(b) Main relining projects, service line insertion projects, joint encapsulation projects, and other similar projects extending the useful life or enhancing the integrity of pipeline system components undertaken to comply with state or federal safety requirements[.]

In July 2013, Liberty filed a petition with the Commission to change its ISRS to recover costs incurred due to infrastructure system replacements that Liberty made from June 1, 2012 through May 31, 2013. Pursuant to Section 393.1015.2(1), when a petition to establish or change an ISRS is filed, the Commission is required to conduct an examination of the proposed ISRS. The Commission's Staff may examine the petitioning gas corporation's information to confirm that the costs are in accordance with the ISRS statutes and that the proposed charges are properly calculated. § 393.1015.2(2). Staff may then submit a report of its examination to the Commission no later than sixty days after the petition was filed. *Id*. The Commission may hold a hearing on the petition and must "issue an order to become effective not later than one hundred twenty days after the petition [was] filed." § 393.1015.2(3).

In this case, Staff from the Commission's Auditing and Energy Units conducted an investigation of Liberty's ISRS petition. Liberty sought to recover costs for 275 distinct projects. Of these 275 projects, Staff's investigation included reviewing 36

3

Liberty work orders totaling approximately $2.2 million, which was about 58% of the amount that Liberty requested in its ISRS petition.[2]

The work orders that Staff examined provided enough information to demonstrate that the projects involved replacement of steel or polyethylene pipe. Some projects included the installation of either gas safety valves or excess flow valves. The work orders noted the age of the pipe being replaced and any corrosion or other defects. Staff determined that the work orders involved pipe replacements that improved the integrity of the system, rather than maintenance expenses, such as merely wrapping a pipe.

Additionally, Staff reviewed Liberty's project sub-ledger, which designated whether a project included material, supplies, overhead, or labor, and whether the project was performed for the integrity of the system or for growth. The costs included in the project sub-ledger were detailed enough for Staff to understand the activities and costs incurred for each job.

In reviewing Liberty's initial calculations, Staff noticed that Liberty had included some growth projects, which are not eligible for recovery in an ISRS under Section 393.1009(3)(a). Staff removed those projects when it performed its own calculations. Staff also identified other errors and omissions in the data provided by Liberty, including summation errors; errors in accumulated depreciation, deferred income taxes, property taxes, depreciation rates, and conversion factors; and formula errors. Staff filed a report, with two subsequent updates, recommending several adjustments to Liberty's ISRS petition to correct the identified errors and omissions. Staff then calculated an

_____

[2] According to Staff, if this were a general rate case and not an ISRS request, it would be able to examine significantly more project work orders because Staff has more time to conduct its investigation in a general rate case.

4

adjusted ISRS. Liberty agreed with Staff's recommendations and calculations in the adjusted ISRS.

Public Counsel filed a motion requesting that the Commission reject Liberty's ISRS petition or schedule an evidentiary hearing. In its motion, Public Counsel asserted, among other things, that Liberty was seeking to recover expenses in its proposed ISRS that were not authorized by Section 393.1009(5).

The Commission held an evidentiary hearing, and the parties argued their positions in post-hearing briefs. One of the arguments that Public Counsel made was that Liberty should not be allowed to recover its expenses for infrastructure that was replaced because it was accidentally or negligently damaged by a third party, such as a when a contractor accidentally struck a main or service line while digging. Public Counsel contended that the replacement of a pipe that was accidentally damaged during excavation activity did not satisfy Section 393.1009(5)(a)'s requirement that the replacement was for "existing facilities that have *worn out or are in deteriorated condition*." (Emphasis added.)

The Commission rejected this argument, however, and approved Liberty's ISRS petition as corrected by Staff's adjusted ISRS. In its report and order, the Commission noted that the term "deteriorated" was commonly defined as "to lower in quality, character, or value." Applying this definition, the Commission concluded that a pipe that has been damaged by a third party is in deteriorated condition "because it has been lowered in quality, character, or value, although that deterioration has occurred quicker than what happens normally through the passage of time." Therefore, the Commission determined that Liberty's projects replacing pipes that were damaged by a third party

5

qualified as "gas utility projects" under Section 393.1009(5)(a). Additionally, the Commission found that those projects qualified as "gas utility projects" under Section 393.1009(5)(b), because they were "projects extending the useful life or enhancing the integrity of pipeline system components."

Having found that the ISRS projects remaining after Staff's calculation of the adjusted ISRS were "gas utility projects," the Commission further found that the projects were "eligible infrastructure system replacements" under Section 393.1009(3). Specifically, the Commission found that the projects did not increase revenues by directly connecting to new customers; were in service, used, and useful; were not included in Liberty's rate base in its most recent general rate case; and replaced or extended the useful life of an existing infrastructure.

In determining the amount of the ISRS to authorize, the Commission noted that Public Counsel did not present any evidence that Staff's adjusted ISRS calculations were incorrect and that Public Counsel did not make its own ISRS calculations. The Commission also found that Staff's witnesses were more credible than Public Counsel's witness regarding the evaluation of Liberty's ISRS request because the testimony of Staff's witnesses was more detailed and precise. The Commission, therefore, authorized a change to Liberty's ISRS to allow it to recover revenues of $572,662, which was the amount proposed in Staff's adjusted ISRS.

Liberty filed a new ISRS tariffs in compliance with the Commission's order, and the Commission approved the tariffs. Public Counsel filed an amended application for rehearing, which the Commission denied. Public Counsel appeals.

### STANDARD OF REVIEW

6

Appellate review of the Commission's order is limited to determining whether it is lawful and reasonable. *State ex rel. MoGas Pipeline, LLC v. Pub. Serv. Comm'n*, 366 S.W.3d 493, 495-96 (Mo. banc 2012). An order is lawful if the Commission acted within its statutory authority. *State ex rel. Sprint Mo., Inc. v. Pub. Serv. Comm'n*, 165 S.W.3d 160, 164 (Mo. banc 2005). The Commission's order "has the presumption of validity." *Id.* An order is reasonable if it is supported by substantial, competent evidence, it is not arbitrary or capricious, and the Commission has not abused its discretion. *State ex rel. Praxair, Inc. v. Pub. Serv. Comm'n*, 344 S.W.3d 178, 184 (Mo. banc 2011).

## ANALYSIS

In its sole point on appeal, Public Counsel contends the Commission's order is unlawful and unreasonable because it allows Liberty to recover costs through the ISRS that are not authorized by the ISRS statutes. Specifically, Public Counsel argues that the Commission erred in finding that Liberty's projects replacing pipes that were damaged by a third party are "gas utility plant projects" under Section 393.1009(5)(a):

> (a) Mains, valves, service lines, regulator stations, vaults, and other pipeline system components installed to comply with state or federal safety requirements as replacements for existing facilities that have worn out or *are in deteriorated condition*[.]

(Emphasis added.) Public Counsel asserts that the Commission erroneously interpreted the phrase "are in deteriorated condition" to include pipes that have been damaged by third parties. Public Counsel insists that the reference to facilities in "deteriorated condition" includes only those facilities whose quality has been gradually lowered over time, rather than facilities that have been destroyed or damaged immediately through a third party's accident or negligence.

7

The interpretation of a statute is a matter of law, which this court reviews *de novo*. *Laclede*, 417 S.W.3d at 819. While the "'interpretation and construction of a statute by an agency charged with its administration is entitled to great weight,'" we "exercise[ ] independent judgment and must correct erroneous interpretations of law." *Sprint Mo.,* 165 S.W.3d at 164 (quoting *Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193, 197 (Mo. banc 1972)).

Our goal in interpreting Section 393.1009(5)(a) is to ascertain the legislature's intent from the language used and give effect to that intent, if possible. *Laclede*, 417 S.W.3d at 820. If the legislature's intent is "clear and unambiguous, then we are bound by that intent." *Id.* "We 'look beyond the plain meaning of the statute only when the language is ambiguous or will lead to an absurd or illogical result.'" *Id.* (citation omitted).

In considering whether Section 393.1009(5)(a)'s reference to facilities that "are in deteriorated condition" includes those that have been damaged by third parties, we note that the term "deteriorated" is not defined in Chapter 393. Where no statutory definition exists, we are to give statutory terms "'their plain and ordinary meaning as derived from the dictionary.'" *MoGas Pipeline*, 366 S.W.3d at 498 (citation omitted).

The dictionary definition of the term "deteriorate" is: "to make inferior in quality or value: IMPAIR"; "to grow worse"; "become impaired in quality, state, or condition: DEGENERATE." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 616 (1993). Applying this definition to Section 393.1009(5)(a), facilities that are in "deteriorated" condition are those that have been made inferior or become impaired in quality, state, or value. While the term "deteriorated" may also

8

describe diminution or impairment that has occurred gradually over time, as evidenced by the alternative meaning "to grow worse," the definition is not restricted to describing *only* diminution or impairment that has occurred over time.  Rather, "deteriorated" is broadly defined, allowing the Commission latitude in deciding whether costs are recoverable under this section.

Because pipes that have been damaged by a third party are facilities that have been made inferior or become impaired in quality, state, or value, they constitute facilities that the Commission could have properly determined to be  in "deteriorated" condition under the plain language of Section 393.1009(5)(a).  Therefore, the Commission's decision to allow Liberty to recover its costs, through the ISRS, for projects replacing such facilities is lawful and reasonable.[3]  Public Counsel's point is denied.

---

[3] During oral argument, the issue was raised as to whether allowing Liberty to use the ISRS to recover its costs to replace pipes damaged by a third party's or its own employees' negligence would lead to a double recovery for Liberty, because either the third party or insurance presumably would compensate Liberty for those costs.  First, we note that the Commission's decision, and, in turn, this appeal, concern only the recovery of costs for damage caused by a third party, not damage caused by Liberty's employees.  Second, Public Counsel addressed the double recovery issue before the Commission.  In its response to Public Counsel's concerns, Liberty stated in its post-hearing brief that it credits any compensation received from either third parties or insurance to the relevant project number.  Liberty explained that, if the recovery occurs before an ISRS filing, it is reflected in the ISRS filing.  If the recovery occurs after the ISRS filing, then it is reflected in the true-up in the rate case.  This is consistent with the ISRS statutes, which provide that the Commission is not bound by its approval of an ISRS and, during a subsequent general rate proceeding, may "undertake to review the prudence of such costs." § 393.1015.8.  See also § 393.1015.9 (stating that "[n]othing in this section shall be construed as limiting the authority of the commission to review and consider infrastructure system replacement costs along with other costs during any general rate proceeding of any gas corporation").  Section 393.1015.8 further provides that, "[i]n the event the commission disallows, during a subsequent general rate proceeding, recovery of costs associated with eligible infrastructure system replacements previously included in an ISRS, the gas corporation shall offset its ISRS in the future as necessary to recognize and account for any such overcollections."  These statutory provisions guard against any double recovery by the gas corporation.

**CONCLUSION**

We affirm the Commission's report and order.

_____
**LISA WHITE HARDWICK, JUDGE**

**ALL CONCUR.**